CASE 19—PETITION EQUITY—OCTOBER 4.

# Seiler, &c., v. Northern Bank of Kentucky.

### APPEAL FROM KENTON CHANCERY COURT.

1, A CONVEYANCE ABSOLUTE IN FORM MAY BE SHOWN BY PAROL EVI-
DENCE TO BE BUT AN EQUITABLE MORTGAGE, and the courts, in fact,
lean to this conclusion in doubtful cases. The question in this case is,
·however, *res judicata*.

2. RES JUDICATA.—Where two or more actions are consolidated, a party
to one of them is required to notice, and is bound by all that is done
in each and all of them.

3. SAME.—A party to an action will not be permitted to lie by while
another party makes an issue in which he is interested, and then say
that he is not concluded by the judgment of the court upon that
issue because he did not make the issue and was not a party to it.

In a contest between attaching creditors and a creditor asserting a
vendor's lien, as to whether the transaction between the latter and the
debtor was a sale or a mortgage only, sureties of the debtor in the
notes to secure which a vendor's lien was asserted were interested in
having the transaction declared to be a mortgage, and being parties
to that action they are concluded by the judgment of the court upon
that issue, although they did not join in the issue.

4. A CLERICAL MISPRISION can not be corrected after the expiration of the
term at which the judgment was rendered, except upon notice to the
adverse party or his attorney; and where the court attempts to do so
without such notice, the corrected judgment is void, and no appeal lies
from it without a motion being first made in the lower court to set it
aside.

5. A MERE MISTAKE IN COMPUTATION IS A CLERICAL MISPRISION, and
may, upon notice to the adverse party, be corrected at any time. As
to it there is no limitation.

6. REVERSIBLE ERROR.—An error of thirty-four dollars is too small to
justify a reversal in a case involving many thousands of dollars.

B. F. GRAZIANI AND J. P. TARVIN FOR APPELLANT SEILER.

1. A deed absolute upon its face may be shown to be only a mortgage.
(Secrest v. Turner, 2 J. J. M., 471; Oldham v. Halley, 2 J. J. M.,
115; Bright, &c., v. Wagle, 3 Dana, 252; Honore v. Hutchings, 8
Bush, 695; De France v. De France, 34 Pa. St., 385; Jones on Mort-
gages, vol. 1, sec. 327.)

2. All errors that could have been corrected on first appeal must on second

Seiler, &c., v. Northern Bank of Kentucky.

appeal be regarded as settled. (Davis v. McCorkle, 14 Bush, 746; Mason v. Mason, 5 Bush, 187; Ford v. Gregory, 10 B. M., 175; Bierer v. Fretz, 14 Pacific Reporter, 558; Golson v. Dunlap, 14 Pacific Reporter, 576.)

ROBERT RICHARDSON for appellant FRANK HONE.

Cites: Streshly v. Powell, 12 B. M., 280; Gully v. Grubbs, 1 J. J. M., 389.

HALLAM & MYERS of counsel for appellants.

GEORGE R. McKEE for appellee.

On second appeal nothing is brought up but the proceedings subsequent to the mandate. (Ex Parte Slidell, 12 Peters, 483; Hunly v. Rose, 5 Cranch, 314; Tharp v. Collon, 7 B. M., 643.)

W. H. MACKOY of counsel on same side.

JUDGE HOLT delivered the opinion of the court.

Charles Geisbauer died heavily indebted, and the owner of a large brewery. In order to prevent its sale at the suit of creditors, his executor and devisees applied to the appellee, the Northern Bank of Kentucky, for a loan, to be secured by a mortgage on the property. It was refused.

Subsequently the property was conveyed to the bank by the widow, heirs and executor for the consideration of sixty thousand dollars by a deed absolute in form. Simultaneous with this conveyance the appellee sold and agreed to reconvey it to Louis Geisbauer, a son of the decedent, for one hundred and seventy-seven thousand seven hundred and forty dollars, upon long credit, and in payments, with the stipulation that if any of the notes were not paid at maturity the entire purchase money should, at the election of the bank, become due. The debts of the father were paid with the money thus obtained, including a large one to the

vol 86—9

bank. For the greater portion of the purchase-money Louis Geisbauer gave his individual notes to the bank; but for the balance of it he executed notes with the appellants as his sureties. By reason of default of payment of one of them this action, seeking a personal judgment and the enforcement of a vendor's lien, was brought upon all of the unpaid ones, all of the appellants being made parties to the action.

Other creditors of Louis Geisbauer brought suit and attached certain property upon the brewery premises, claiming that it was not covered by the lien of the bank, and that it had been obtained by Louis Geisbauer subsequent to his purchase of the bank. These creditors, or some of them, also made themselves parties to this suit, and insisted that the agreement, first between the widow, devisees and executor of Charles Geisbauer and the bank, and then between the latter and Louis Geisbauer, was, in fact, but a mortgage, and should be regarded as one transaction. All the suits were consolidated, and a considerable litigation followed between the bank and the attaching creditors, *but to which the present appellants were parties.* By consent, all of the property was sold, the proceeds to be the subject of the litigation. The lower court held that the transactions between the Geisbauers and the bank constituted only a mortgage, and allowed the attaching creditors six thousand two hundred and ninety-two dollars out of the fund in court, upon the ground that this much of it had been realized by the sale of property upon which the bank had no lien.

From this judgment the bank appealed to this court.

Its opinion in the case may be found in 83 Ky., page 154 (Northern Bank of Ky. v. Deckebach, &c.) It held that the purchase by the bank and then the sale to Louis Geisbauer were absolute sales, and that they did not constitute a mortgage; but affirmed the judgment of the lower court, inasmuch as it afforded no relief, save it gave a portion of the fund in court to the attaching creditors, which, in the opinion of this court, was right. *The present appellants were parties to that appeal.* Upon the return of the cause the lower court rendered a judgment against the appellants for the amount of the notes sued upon, less the fund left from the sale of the property after the payment of the six thousand two hundred and ninety-two dollars to the attaching creditors; and of this they now complain, the principal ground of complaint being that the transfer to the bank and then by it to Louis Geisbauer was but a mortgage and not an absolute sale.

The doctrine is well settled that a conveyance absolute in form may be shown by parol evidence to be but an equitable mortgage. In fact, courts lean to this conclusion in doubtful cases. The question in this case is, however, *res judicata.* This court, upon the former appeal, passed upon it.

It is urged that the appellants were merely nominal parties to it; that no error was assigned as to them; that the then controversy was between the attaching creditors and the bank, and that the appellants were not interested in it. The latter part of this statement is certainly incorrect. The bank was asserting a vendor's lien. The attaching creditors denied this, and claimed that it had but a mortgage

lien.  If so, it was open to defenses not available as against a vendor's lien.  The appellants were certainly interested in this issue.  If the attaching creditors suc- ceeded as to it, then the liability of the appellants might be decreased.  It was exactly the issue which they now present; and when presented before, although by other litigants, yet they were then parties to the action and interested in the determination of this issue. The character of the lien of the bank and what it em- braced was in question.  The appellants were not only interested in having it declared to be a mortgage lien only, because this was likely to lessen the debt, but also in defeating the claim of the attaching creditors, as the entire fund would then be applied in payment of the liability of the sureties..

The actions were consolidated; and a party to one of them was required to notice, and was bound by all that was done in each and all of them.  The law looks approvingly toward *the end* of a litigation.  It will not, therefore, permit *a party* to a suit to lie by while another makes a question in which he is interested, and then say that he is not concluded by it.  In this instance, upon the former appeal, one of the errors as- signed by the bank was that the lower court had held the transaction to be a mortgage instead of an abso- lute sale.

One other question remains to be considered.

After the determination of the former appeal, the lower court at its October term, 1885, rendered a judg- ment against the appellants for fifteen thousand three hundred and sixty-eight dollars, with interest from April 17, 1880, which was the date of the sale of the

property. This amount appears to have been arrived at by first deducting from the proceeds of the sale the six thousand two hundred and ninety-two dollars allowed the general creditors, and seven hundred and fifty dollars for the master commissioner. The remainder was then applied first to extinguish the individual notes of Louis Geisbauer, and then as a credit on the unpaid notes of the appellants.

At the same term of court that this judgment was rendered the appellants, save Louis Geisbauer, moved to correct it. The motion gave no reason or grounds for doing so. The entry of record is simply that they moved to correct it. The bank in no way entered its appearance to it, nor did the court act upon it at that term. There was no order continuing the motion or reserving it for further consideration, or suspending the judgment. At the next term of the court it rendered what was termed "a corrected judgment" against the appellants for the sum of eleven thousand seven hundred and twenty-six dollars and fifty cents, with interest from that time until paid. We do not see how this result was reached ; but as this record stands it is immaterial. The appellants have appealed from both judgments, while the appellee, by a cross-appeal from the last one, insists that the first judgment must be upheld. This involves the right of the court to render the last one.

It is said, *arguendo*, that the power of the court over the first judgment expired when the term ended at which it was rendered, and that the motion to correct it then died. Upon the other hand, it may be said that, from the mere entry of it, we are to infer

a suspension of the judgment, and that the court took time to consider it.

Undoubtedly, the first judgment was a final one. It fixed the rights of the parties, and admitted of enforcement without further order of the court. The cause was then at an end between the parties to this appeal; and in the absence of notice as provided by statute, they were not required to pay any further attention to it. The bank was then out of court. The judgment not having been suspended by an order of court or by implication by any act of the court, the appellee had a right to enforce it. The power of the court over it was at an end, unless exercised in conformity to the statute.

By sections 518 *et sequentes* of the Civil Code, a court may in certain ways, and for certain reasons, vacate or modify a judgment after the expiration of the term at which it was rendered. This case does not come within any of those provisions, however, unless the rendition of the first judgment involved a clerical misprison. It is unnecessary to decide whether it did or not, because the lower court, *per* section 519 of the Civil Code, can not correct a judgment upon this ground after the expiration of the term at which it was rendered, unless notice be given to the adverse party or his attorney. In this instance the motion did not state any ground for correction; but waiving this objection, inasmuch as the court in fact acted upon it, yet there was no notice of it given to the adverse party. The bank was then not in court. It, in the absence of notice, was no longer required to be observant of any further action in the case. It results that the court

had no jurisdiction to render the last judgment; and it being void, no appeal lies from it without a motion being first made in the lower court to set it aside, which was not done. (Civil Code, section 763.) Both the appeal and the cross-appeal from it must, therefore, be dismissed.

This leaves the appeal from the first judgment yet to be considered. According to our calculation, based upon the items and figures shown by the record, it is for about thirty-four dollars too much. Whether this resulted from a mere mistake in calculation in the lower court, or from the exercise of its judgment in allowing some item of cost or expense, we are unable to say. If the former, it may yet be corrected in the court below upon proper notice, because it should be regarded as in fact the act of the clerk, and as a clerical misprision, as to which there is no limitation, and can be no appeal prior to a refusal by the lower court to correct it. Indeed, if there be any mistake in the mere computation, whether it be much or little, it may yet be corrected in the manner indicated.

If, however, the small error indicated was, in fact, the result of an exercise of judgment upon the part of the court in the allowance of expense or cost, and not a mere clerical misprision, yet in a case like this, involving thousands of dollars, justice would be nearest attained by applying the maxim—*de minimis non curat lex.*

The appeal from the judgment of October 27, 1885, is affirmed, and the appeal and cross-appeal from that of June 18, 1886, are dismissed.