## Combs, Guardian, et al. v. Deaton, et al.

(Decided June 1, 1923.)

### Appeal from Breathitt Circuit Court.

1. Judgment—Attack is Collateral if Other Relief is Sought in Addition to Cancellation of Judgment—"Collateral Attack"—"Direct Attack."—A proceeding which has for its sole purpose the vacation of a judgment is a direct attack, but, if any other relief is sought, and the setting aside of the judgment is incidental to that relief, the attack is collateral.

2. Judgment—Attack on Judgment in Ejectment Suit Held Collateral. —Where the original petition was in ejectment to recover a tract of land, and an attack on a judgment in defendant's chain of title was introduced by a subsequent pleading of plaintiff in an attempted avoidance of defendant's title, the primary relief was the recovery of the land, and the setting aside of the judgment was only an incident, so that the attack was collateral, and not direct.

3. Judgment—Pleadings in Collateral Attack Held to Allege Record Affirmatively Showed Judgment was Void.—A pleading which collaterally attacked a judgment in defendant's chain of title by

alleging that the record on which the judgment was based showed that the action had been dismissed before the judgment was rendered sufficiently complied with the rule that, to sustain a collateral attack, the pleading must allege that the matter avoiding the judgment appeared affirmatively by the record, even though the present pleading did not use the word "affirmatively."

4. Judgment—Court Has no Jurisdiction to Render After Dismissal Until Order Dismissing is Set Aside.—A court has no jurisdiction to render a judgment in a cause after its dismissal until the order dismissing it is in some recognized manner set aside or vacated so as again to bring the parties into the cause, and the judgment rendered without such disposition of the dismissal order is void.

5. Judgment—"Clerical Misprision" or "Clerical Error" can be Corrected Only from Data in Record.—A clerical misprision, which is a mistake or a fraud perpetrated by a clerk of the court which is susceptible of demonstration by the face of the record, or a clerical error, which is an error by a clerk in transcribing or otherwise apparent on the face of the record, can only be corrected from data appearing otherwise in the record, and not from the memory of the judge or the clerk nor upon parol testimony.

6. Judgment—Record Held Not to Authorize Correction of Mistaken Entry of Dismissal.—Where the record in the case in which a judgment had been rendered showed that the action had been dismissed by plaintiff without prejudice before the judgment was rendered, and there was nothing appearing in the record to show mistake in the entry of the dismissal order, the court had no authority subsequently to expunge the dismissal order from the record on the ground it was a clerical misprision.

7. Subrogation—Subsequent Grantee from Purchaser at Void Judicial Sale Under Vendor's Lien is Subrogated to the Lien.—Where the defendant had acquired the title of a purchaser at a sale under a void judgment for a vendor's lien against the land he is entitled, in an action to recover the land, to be subrogated to the vendor's lien to enforce which the judgment was rendered.

8. Subrogation—Subsequent Grantee Must Allow All Claims Against Lien to which He is Subrogated.—A grantee of the purchaser under a void judicial sale who is entitled to be subrogated to the vendor's lien, to enforce which the judgment was rendered, must allow plaintiff all credits which he would be entitled to assert against the original lienholder, since his right grows out of that of the lienholder.

9. Improvements—Good-faith Purchaser Can Claim Credit for Improvements, Notwithstanding Constructive Notice.—Within the rule that a bona fide purchaser, while acting in good faith and belief that he owns the land under a perfect title, may have a lien against the true owner for the enhancement of the value by improvements placed thereon by him, a purchaser is bona fide and acting in good faith if he has no actual knowledge of a defect

in the title, though he may be charged with constructive knowledge thereof.

10. Improvements—Lien for Improvements Extends Only to Amount by Which Value is Increased.—The lien of a bona fide purchaser for improvements placed on the land by him in good faith believing himself to be the actual owner is not for the cost of improvements, but only for the amount by which the improvements increased the value of the land, not exceeding their cost.

J. B. ADAMSON and M. H. HOLLIDAY for appellants.

E. C. HYDEN and HAZELRIGG & HAZELRIGG for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing

This action when first filed on September 27, 1911, by appellant, Mary E. Combs, individually and as guardian for the other appellants, who are the infant children of Mrs. Combs by her former husband, James G. Deaton, and the wards of Mrs. Combs, as plaintiffs below against appellee and defendant, Edward Deaton, was an ordinary one in ejectment to recover the title to and possession of a tract of land in Breathitt county containing 94 2/3 acres which the petition averred was owned by plaintiffs and wrongfully withheld from them by the defendant. The original answer was a denial of plaintiffs' title and assertion of title in defendant. The case pended upon the docket for a number of years, during which time amended pleadings were filed by both sides to the litigation. In one of the amended petitions it was averred in avoidance of a judgment rendered on March 19, 1901, in the case of Levy Strong v. William Sebastian and others, then pending in the Breathitt circuit court, under which the land was sold, and which sale was a chain in defendant's alleged title, that the judgment in that case was void for the two reasons, (a) that two of the infant children therein who were surviving children of James G. Deaton, their father, were over fourteen years of age when that suit was filed and were never summoned as defendants in the cause, and (b) that the judgment was rendered therein after the action had been dismissed by plaintiff without prejudice on June 21, 1900, about nine months before the judgment was rendered under which the land was sold by the commissioner and bought by the plaintiff in that action, Levy Strong, who was at that time the husband of Mrs. Combs, the appellant, he having married her after the death of her first husband, James G. Deaton.

In that action, which was filed on April 23, 1900, by Levy Strong against his wife, formerly the widow Deaton, and her infant children for whom she was the duly appointed statutory guardian, the plaintiff sought the enforcement of a vendor's lien against the land in controversy for the sum of $1,119.53. He also alleged in that petition that his vendee, James G. Deaton, to whom he had sold the land, paid at the time he executed the deed $1,005.47, which with the deferred payments amounted to $2,125.00, the total purchase price of the land, and he expressed in his petition a willingness to rescind the trade by taking the land back and paying to the estate of Deaton the amount of the purchase price which the latter had paid at the time the deed was executed. We will hereafter refer to that proceeding as the "Strong case." At the sale by the commissioner under the judgment therein Strong became the purchaser of the land at the amount of his debt and he received the deed from the commissioner, and later sold it to Ed. Callahan, who in turn sold it to Jacob Terry, and on October 1, 1910, he sold it to defendant, Edward Deaton.

Answering the amended petition, the defendant denied the invalidity of the judgment in the Strong case, and pleaded laches on the part of plaintiffs as well as title acquired by adverse possession of himself and vendors, and in other paragraphs he relied on his right to be subrogated to the rights of Levy Strong, at least to the extent of the unpaid purchase money owed to him by Deaton and for which the land was sold, in the event the court should hold that the judgment in the Strong case, under which defendant claimed, was void for any reason; and in that event he also alleged that he was a *bona fide* purchaser in good faith and claimed the right to be adjudged a lien for the taxes which he and his vendors (immediate and remote) had paid on the land since the master commissioner's sale and for lasting valuable improvements which he said he had put upon the land and which materially enhanced its value. He furthermore pleaded that the order in the Strong case dismissing it without prejudice was a clerical misprision and was put upon the docket through oversight or mistake of the clerk and that as a matter of fact it was never made or authorized by the plaintiff in that suit or his attorney, but if that was not true then, he pleaded that plaintiffs herein and defendants therein waived the order of dismissal by filing

an answer in that case on March 19, 1901, the day upon which the judgment was rendered, and in effect that they by doing so entered their appearance and consented that the case might be reinstated on the docket, and for that reason they could not take advantage of the order of dismissal entered nine months before that time at the June, 1900, term of the court. Accompanying that pleading of defendant was a motion in this case to redocket the Strong case and to enter a *nunc pro tunc* order in the latter case expunging from the record the order dismissing it without prejudice. Appropriate pleadings made the issues. Proof was taken and the cause was transferred to equity, and on final submission the court redocketed the Strong case and expunged from its record the order dismissing it upon the ground that it was a clerical misprision and dismissed plaintiff's petition, from which they prosecute this appeal.

It is first insisted by plaintiffs that the attack made herein on the judgment in the Strong case is a direct one, while defendant contends that it is a collateral one, and the determination of that question is our first task. An examination of the adjudged cases, as well as text writers dealing with the subject, will demonstrate that the question as to whether an attack on a judgment is a direct or a collateral one is frequently attended with much difficulty, but we have adopted the rule which is applied by the great majority of courts, that a proceeding which has for its sole purpose the vacation or nullification of the attacked judgment is a direct attack, but if any other relief is sought and the setting aside of the judgment is incidental to that relief then the attack is a collateral one. Some of the latest cases from this court dealing with the question and determining it as indicated are: Baker v. Baker, etc., 162 Ky. 694; Harrod v. Harrod, 167 Ky. 308; Crider v. Sutherland, 186 Ky. 7, and Gardner v. Howard, 197 Ky. 615. Many other cases are cited in the opinions of this court in the cases referred to, and in the Harrod case, following the same rule as laid down in the Baker case, it was held that a direct attack on a judgment can only be made in the manner pointed out in the Code; "that is to say, by prosecuting an appeal or by proceedings had under the Code and in the manner pointed out in sections 344, 414 and 518 for the modification or vacation of judgments. An attack made on a judgment in any other way is a

collateral one. Black on Judgments, vol. 1, section 252; Vanfleet on Collateral Attack on Judicial Proceedings, section 2; Duff v. Hagins, 146 Ky. 792.'' To the same effect is the opinion in the case of Johnson v. Carroll, 190 Ky. 689. So far as we have been able to find there is no contrary holding by this court and under the rule as so adopted and applied there can be no escape from the conclusion that the attack in this case on the judgment in the Strong case is a collateral one. The only reference to that case or the judgment therein is an attempted avoidance by plaintiffs in their pleadings of a reliance by defendant on the commissioner's deed which forms a chain in his title. The primary relief in the whole action was the recovery of the land, and the setting aside of the judgment and its nullification was only an incident to that relief. We have no hesitancy in concluding that the rights of the parties herein must be adjudged by the rules applicable to collateral attacks.

At this point it is strongly insisted by defendant's counsel that the presumption in favor of judgments of courts of record and of general jurisdiction renders it necessary before a judgment will be declared void in a collateral attack for the record to affirmatively show the avoid matter rendering the judgment of no effect and the pleading making such attack must affirmatively allege that the record so shows, and it is urged that there is no such allegation by plaintiffs in this case in their pleading attacking the judgment in the Strong case. We can not agree with this contention since plaintiffs' pleading attacking that judgment says that it is void for the reasons therein pointed out and it refers to the record as showing the matter rendering it void, and especially is this true with reference to the order of dismissal and the failure of the court to thereafter reinstate the case. It is true that the word ''affirmatively'' is not employed in the pleading, but its substance and effect was that the record in the Strong case affirmatively showed the order of dismissal of that case and that it was never reinstated.

The universal rule as we find it stated in text books and adjudged cases is that a court has no jurisdiction to render any order in a cause after its dismissal until the dismissing order is in some recognized manner set aside or vacated so as to again bring the parties into the cause, and if a judgment should be rendered with-

out such disposition of the dismissal order it is void. In 18 Corpus Juris 1171-2, the rule of practice is thus stated: "The dismissal of an action ousts the court of its jurisdiction of the action dismissed, which can be resumed only when the order of dismissal is vacated, or upon a motion for a new trial, or in an action for a new trial brought pursuant to statute. No further proceedings can be had or judgment rendered by the court, except such order or judgment as may be necessary to close the litigation properly." Supporting the text is the case of Foster v. Atkison, 1 Litt. 214, and in its opinion this court at that early date said: "After the non-suit the parties were out of court, and to have authorized any proceedings in the cause, at a subsequent term, the nonsuit should have been set aside at the term it was ordered, or the cause should have been continued to some subsequent term, to have enabled the court thereafter to set the non-suit aside." Other cases in point are: Howe v. Anderson, 12 Ky. L. R. 303; Ashlock v. Commonwealth, 7 B. Mon. 44; Aikman v. South, 29 Ky. L. R. 1201; Bennett v. Bennett, 95 Ky. 545, and Phillips v. Arnett, 164 Ky. 426. The doctrine in those cases is bottomed upon the theory that when an order of dismissal of a cause is entered, or any other order having that effect is made, without being set aside at the same term of court, it becomes final and the court loses jurisdiction of the parties unless the order is vacated in some of the methods established by the law for the purpose; and unless it is so vacated any subsequent judgment is void, the effects of which are not only pointed out in the cases referred to but likewise in the case of Carpenter v. Moorelock, 151 Ky. 506, and the Johnson case, *supra*. Unless, then, something appears in this record curing the invalidity of the judgment rendered in the Strong case after it, as appears of record, was dismissed by plaintiff therein, the judgment of sale was void and plaintiffs herein were not divested of title to the land in controversy.

To avoid the consequences of the dismissal order in the Strong case it is urged by defendant's counsel that its entry was a clerical misprision which the court could and did correct in this case by expunging it from the record. The trouble with that position is that if we should concede that the entry of such an order could be classed as a clerical misprision (which we very much doubt), then we would still be confronted with the uni-

versal rule of practice that the record should furnish some data upon which the correction could be made. The text in 11 Corpus Juris 839, defines a clerical misprision as "A mistake or a fraud perpetrated by a clerk of court, which is susceptible of demonstration *by the face of the record*," (our italics), and on the same page in discussing what constitutes "clerical error," which is closely akin and related to "clerical misprision," it is said: "An error made by a clerk in transcribing, or otherwise, which must be apparent on the face of the record, and capable of being corrected by reference to the record only." The requirement that the misprision should be demonstrated by the face of the record was recognized by this court in the early case of Coon v. Doyle, 2 Bibb. 248. In that case, besides holding that the rule was inviolable that no amendment can be made unless there is something in the record to amend by, the court said: "This rule is necessary to preserve that sanctity and verity which in contemplation of law the record possesses. For if the record should be altered or amended by anything but itself, it would in point of *verity* be inferior to that by which it is amended." And it was distinctly held in that opinion that no error could be corrected after the term at which it was made upon the mere recollection of the judge or clerk, and as a necessary consequence it could not be corrected by the parol testimony of others whose duties to make the record speak correctly were not so imperative. To the same effect are the cases of Smith v. Mullins, 3 Met. 182; Seiler v. Northern Bank, 86 Ky. 128; Bonar v. Gosney, 17 Ky. L. R. 92; Commonwealth v. Caudill, 121 Ky. 537, and Brashears v. Brashears, 110 S. W. (not elsewhere reported) 303.

Without, then, considering the question of limitation against the right to correct the judgment in this case at this late day, we must hold that there was nothing in the record by which the alleged clerical misprision in entering the dismissal order could be corrected, and that the court was without jurisdiction to expunge that order from the Strong case upon a motion made for that purpose in this case. We, therefore, hold that the judgment in the Strong case, and under which the land was sold, was void for the reason that it was rendered after the cause was dismissed and without any appropriate action taken to correct that order. There was, therefore, no cause pending at the time of the alleged answer filed

by the guardian of the infant plaintiffs in that case, even if that was done by her authority, and even if she had the right to enter the appearance of her wards, which we extremely doubt, but which we deem unnecessary to determine. This conclusion disposes of the necessity of considering or in any manner determining the other grounds urged against the validity of that judgment.

That the defendant has the right to be subrogated to the rights of Strong as against James G. Deaton, and his heirs, the plaintiffs in this case, we entertain no doubt. 24 Cyc. 70-71; 16 R. C. L. 105, and Forst v. Davis, 101 Ky. 343. Independently, however, of adjudged cases or text authority upon the subject, we would have no trouble in concluding that under the general rules of equity as applicable to the doctrine of subrogation defendant is entitled to all the equitable rights to which Strong would be entitled had he retained the land under the commissioner's deed. When that deed is avoided, as has been done in this opinion, the parties should be placed *in statu quo* as nearly as possible. Plaintiffs can not claim the land without paying the purchase money therefor, and since Strong has been paid by his vendee and presumptively defendant paid full consideration when he purchased it, he should not lose that consideration without plaintiffs being required to discharge the lien which defendant's remote vendor held against the property. It is preeminently a case for the application of the doctrine of subrogation; but in extending to him that right he will be entitled to no more than Strong would be if he was the defendant and claiming title to the land. If, therefore, Strong has in any manner been paid, or there is any offset against his debt for unpaid purchase money, as is contended in plaintiffs' pleading, he would have no lien except for the balance due him, if any, since there would be no debt in his favor to which defendant could be subrogated; for his right grows out of and is dependent upon that of Strong.

We are also of the opinion that defendant is entitled to a lien upon the land for permanent improvements which enhanced its value. It was so held in the Forst case, *supra*, under facts essentially the same as those found in this one. A late case discussing the right to a lien for betterments or improvements is that of Loeb v. Conley, 160 Ky. 91. The opinion in that case approves the doctrine applied by this court in a number of prior

ones cited in the opinion and which follow the statements of text writers upon the subject, to the effect that a *bona fide* purchaser while acting in good faith under belief that he owns and possesses the land under a perfect title makes lasting and valuable improvements thereon may have a lien as against the true owner, not for what the improvements cost him but for the increased value that they added to the land not exceeding their cost price. All the cases and text writers endorse the rule as stated, but there is a divergency among them as to what constitutes a *bona fide* or good faith purchaser, some of them holding that constructive notice of a defect in the title will be sufficient to destroy the right to the lien, while others hold that *actual* notice of such defects is necessary for that purpose. The Forst case, *supra,* is one from this court subscribing to the latter view; and in the Lobe case it is said: "If, however, the improvements are not made by a person while acting in good faith belief that he is the owner of the land, or if they are made with actual notice of and adverse superior claim . . . the person making the improvements will not be entitled to compensation." It will thus be seen that the court was therein of the opinion that a lien would exist unless the purchaser had actual notice of the defect in the title. In the case of Jackson v. Claypool, 179 Ky. 662, a lien for the enhanced value of permanent improvements was allowed to a purchaser at a tax sale when the entire title was sold for a failure of the life tenant to pay the taxes as was his duty. Clearly, the sale of the remainder interest of the land in that case for taxes assessed and due from the life tenant only, was void, but in as much as the purchaser acted in good faith he was given a lien. In the case of Bragg v. McCoy, 188 Ky. 762, a like lien was given to a purchaser of the land of a married woman under a contract and conveyance made exclusively with and by her husband. In doing so the opinion said: "Furthermore, Howard McCoy (the purchaser) was not versed in the law and it is clear that he entertained the honest belief that Frank Bragg had the authority to sell the property and vest him with title and that he was therefore a purchaser in good faith." In the cases of Hawkins v. Brown, 80 Ky. 186, and Weber v. Lightfoot, 152 Ky. 83, a lien was adjudged in favor of the purchaser from the wife of her land but under a deed in which her husband did not join. In a

number of opinions we have held that such deed was void, but notwithstanding that fact, this court adjudged the lien in the cases referred to upon the ground that the purchaser was a good faith one and without *actual* knowledge of the defect in the title. For common law authorities upon the subject see 22 Cyc. 15, 16 and 17, and 14 R. C. L. 22.

The right to a lien in favor of a *bona fide* purchaser who permanently improves the purchased premises in the good faith belief that he is the true owner of the perfect title has a fixed place in equity jurisprudence and chancery courts have long since recognized and enforced it. If the right could be defeated by constructive notice alone, such as is furnished by the public records, then the instances would indeed be rare when the right could be invoked, because in the great majority of cases a will or a deed which contained the matter destroying the supposed perfect title, was of record and being a link in the chain of the purchaser's title, he would have constructive notice of its contents, and his lien would be defeated although he had no *actual* knowledge of any impairment of his title and acted in the most perfect good faith in making the improvements. To follow the holding of the courts that allow constructive notice to defeat the lien would in our judgment practically destroy the equitable right. It is true that to enforce it, except in cases of actual notice, sometimes works a hardship on the true owner of the title, but the same result sometimes follows the strict and literal enforcement of all statutes and legal principles. In cases of the kind we have here this objection might be obviated by postponing the lien on the land or its proceeds until the owner was paid or satisfied for the reasonable market value of the premises immediately before the improvements were made where he was not estopped by his conduct from claiming the right. We have not seen, however, where any court has adopted the suggestion and we advance it only as such without any purpose or intention of its adoption at this time.

We are, therefore, of the opinion that defendant should have a lien for any permanent improvements made upon the land by him to the extent of the enhancement of its value. He is also entitled to be subrogated

as hereinbefore held to the rights of Levy Strong, to be calculated upon the amount of the debt for which he sought to sell and bid for the land with interest thereon, but to be charged by any existing offsets, if any, in favor of the estate of James G. Deaton. He is likewise entitled to all taxes which have been assessed against the land and which have been paid, and he should be charged with the value of its use and occupation, and the court upon a return of the case will refer it to a commissioner with power to take proof and report upon the matters referred to, and render judgment accordingly.

Wherefore, the judgment is reversed with directions to set it aside and for proceedings consistent with this opinion.