## Wayman v. North Kentucky Fair et al.

May 15, 1942.

John H. Klette and Stephens L. Blakely for appellant.

Charles Riley, John L. Vest, E. R. Rivard, L. M. Ackman, W. M. Graham and Ervin L. Bramlage for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

In July 1935 the Realty Corporation of Corinth, Kentucky, bought from North Kentucky Fair a tract of 15 acres in the town of Florence, for $15,000, one-third in cash, the balance evidenced by two notes of $5,000 each, with lien to secure payment. The Realty Company thereafter divided the tract into 131 town lots.

On October 14, 1935, Realty sold to Lincoln Realty Company 23 lots, retaining lien to secure the payment of a $1,600 note. The Lincoln sold these lots subject to Realty's $1,600 lien. On October 17, 1935, Realty mortgaged 4 lots to Farmers Bank of Corinth to secure the payment of a $2,500 note, and on the same day conveyed 11 lots to the Bank, the conveyance being subject to Fair's lien on the whole tract. On the same day Realty borrowed upon its promissory note $1,600 from the Bank and attached to its note as collateral the $1,600 note which Lincoln had given Realty. The Realty Company failing in its obligation, Fair Company sought by equitable action to foreclose.

Included in parties named as defendants was the Farmers Bank of Corinth, Grant County. The trouble which later arose was due to the fact that summons was served on the cashier rather than the president. Civil Code of Practice, Section 51, Subdivision 3.

Upon submission the chancellor, on April 13, 1937, adjudged that the Fair Company had a superior lien on the entire tract to secure the deferred payments. The commissioner was directed to sell a sufficient number of the lots to pay the lien debts. A lien was adjudged in favor of the Realty on lots sold to Lincoln to secure payment of its $1,600 lien note, which had been put up as collateral with the Bank.

Following the entry of the judgment, and on June 14, 1937, the Fair, Realty and Nellie Shoffner stipulated in a filed writing, that the lots could be sold to better advantage if grouped and offered for sale, as specifically set out in the agreement. Pursuant to the judgment and stipulation the commissioner sold the 131 lots, reported his action and on August 11, 1937, the report was confirmed, without exceptions. On November 14, 1938, the Farmers Bank moved to quash the summons, because of irregularity of service as above stated; the court sustained the motion.

At the same term, on December 16, 1938, the chancellor set aside the judgment and report of the commissioner. The order recited that ''several thousand dollars worth of land sold, due to insolvency of purchasers and sureties, * * * has now reverted to the commissioner,'' and one Jennie Bauer has by pleading asserted title to 20 lots, ''and the Farmers Bank has title to 11 of the lots sold, and a mortgage lien on 4 other lots,'' and that the plat on record, and upon which the commissioner relied, did not conform to and define the lots sold as they are described in deeds whereunder the same were held. The commissioner was directed to employ a surveyor to fix the boundaries of the lots; to make a blueprint, and furnish it with his report to the court. The report, if made, is not exhibited in the record here. There were no objections to this order.

The above order was entered December 16, 1938, and on April 12, 1939 (a succeeding term), the appellant, Goldie Wayman, made it known to the court that at the sale conducted by the commissioner, she had purchased lots Nos. 1 to 10, 28 to 32 and 65 to 70, all inclusive, and had executed bond for $3,633, and upon confirmation had paid the commissioner the sum of $1,280.43. She then asserted that on December 16, 1938, the court set aside the order of sale, and ''denied her right to secure a deed,'' the commissioner still retaining her money.

These allegations were followed by her motion for an order directing the commissioner to refund to her the portion of the purchase price paid on the lots.

Thereafter on April 20, 1939, the plaintiff moved the court to set aside the order entered on December 16, 1938, on the grounds that the failure of service on the Farmers Bank "did not affect any of the lots in said subdivision," except those owned in fee by and under lien to the bank, and the court sustained the motion of plaintiff, the order reciting:

"It now appearing to this court that said order was entered without any warrant or authority of this court to enter said order in the way and manner in which same was entered, this court is now of the opinion that said order, to the extent that it undertakes to set aside judgments and orders of this court entered in 1937, is a clerical misprision, and for that reason same is declared to be null and void and a clerical misprision, and the same is set aside to that extent, to which ruling Goldie and R. C. Wayman, * * * except."

It also appears that at the same time the Farmers Bank entered appearance, filing its separate answer and cross-petition setting up its ownership and lien rights upon the lots above noted, and which by "chance" were in part the same lots sold to one purchaser and rights of purchase assigned to others, and asked that they be resold, with other lots where it appeared the purchasers and sureties were insolvent.

It was ordered by the court that the commissioner resell lots or groups involved in the Bank's claim, and those where there had been default. It is admitted that none of the lots which Mrs. Wayman had purchased was included either in the Bank group or in the group ordered resold because of failure to meet purchase requirements.

Mrs. Wayman's motion to refund was overruled, over objection. Following the order of April 20, 1939, sustaining plaintiff's motion to set aside the order of Desember 16, 1938, and directing a resale of lots (not involving those purchased by Mrs. Wayman), she, on December 13, 1939, two terms after the April 1939 term, moved the court to reconsider the order theretofore made

overruling her motion, and to sustain it, due to the fact that ''said judgment and order of sale is void and that the purchaser cannot get a good and marketable title to said property.'' She also moved that the judgment and order of April 27, 1937, be set aside and held for naught, and that she be released from any further obligation upon her sale bonds. The court overruled both motions; she excepted, prayed and was granted appeal, and is the sole appellant.

The matter which is brought to us for determination is somewhat simplified by stipulation of counsel, in substance agreeing that the only question involved is whether the fact that the Bank was not regularly before the court at the time of the rendition of the original judgment, renders void or in any wise affects the sale of all the lots sold under the first order, or whether it renders void only sales of those owned in fee or under mortgage to the Farmers Bank, none of which was purchased by appellant.

''It is conceded by all parties that insofar as these lots (Bank's) are concerned, the sale provided for in the original judgment was void, but it is the contention of appellees that the second sale cured all defects existing in the first sale.''

It is stated that since the sale of the lots many purchasers have made various lasting improvements on their respective lots, ''and the appeal is taken by Goldie Wayman for the purpose of determining whether she is the owner in fee of the lots purchased by her, under the circumstances shown.''

Appellants in brief argue that the April 1937 order was void on five or more grounds. It is said (as is admitted) that the Bank was not properly before the court when judgment was rendered, and the chancellor erred in directing lots in which it was interested to be sold; further that there was an error in adjudging to the Realty Company a lien which should have been adjudged to the Bank.

In respect of these two matters, no one was concerned save the Bank and perhaps the Fair Company, which held a superior lien. These matters did not interest Mrs. Wayman, and since the other interested parties, while before this court on appeal, are not complaining, it must be assumed their claims have been properly

adjusted by the resale of those lots which were involved, none being lots purchased by Mrs. Wayman.

It is also argued that the first judgment directed a sale in accordance with the recorded plat, and that the chancellor recognized that the plat was not so complete or perfect as that some of the purchasers could acquire lots described. This was due to the fact that Mrs. Bauer had set up claim to 20 of the lots. This controversy was cleared up during the litigation by execution of a quit-claim deed by Mrs. Bauer. These lots were in nowise involved in Mrs. Wayman's purchase. Nor does the fact that the lots were sold in groups, as per stipulation, cut any figure in her right of title, and on these and foregoing points, she makes no claim that her title is unsound.

Counsel argues that if the order of December 1938 was a clerical misprision, it was likewise a clerical misprision to enter the annulling order of April 20, 1939, and that the latter order being based on an assumed clerical misprision, is void and of no effect, because the judgment and order was entered without notice or summons upon the "purchasers who had bought under the April 1937 judgment." Citing Section 519, Civil Code of Practice, and Seiler v. Northern Bank of Kentucky, 86 Ky. 128, 5 S. W. 536.

Counsel fails to point out in what respect the April 1939 order would constitute a clerical misprision, and as we closely analyze the order setting it aside, it may be said the court, or perhaps counsel, used some unnecessary language in drafting the order, since it may be gathered by a later order its effect was intended only to cure the defects in regard or to the "extent" which the former order and sale involved the Bauer matter, the Bank's claim and cases where purchasers were unable to meet their purchase obligations. When we read the order of resale this stands out as the obvious purpose and effect of the setting aside and resale orders.

We need not enter into a discussion as to whether the court based its second annulling order on the idea that the annulling order was a clerical misprision under Section 517, Subdivision 1, of the Civil Code of Practice, a premature entry of judgment before the case stood for trial; as we look to the entire record this second order did not affect the lots purchased by Mrs. Wayman. As

above indicated this and other matters foreign to her rights were cured in the resale order. All parties correctly agree that as to the Bank the judgment was void. Long v. Montgomery, 6 Bush 394.

It is apparent that the claim of Mrs. Wayman that the order of April 20, 1939, was a clerical misprision as affecting her rights, and which claim was not made as the basis of her motion, is not well-founded; again she came in too late with her motion to set aside the December 1938 order, which was void only in the respects mentioned, but not as to her rights, because the court had long since lost control of that judgment and for the same reason it might be argued that the 1939 order was void. The motion to enter this order was made by the plaintiff, and neither it nor any one interested, save appellant, is complaining. The court had lost control of its original judgment, and it is obvious that the entries of December 1938 and April 1939, had no binding effect on its validity and the validity of acts done and matters arising thereunder and done in pursuance, with the exception of such acts as were by stipulation admittedly void.

There is little need for discussion of the principle of law that a judgment, void in part, is not necessarily void in entirety.

"It has been said that a judgment must be either valid or void as a whole, and if it is a nullity as to some of the parties affected, it cannot be held good as to others, but this principle is not universally admitted. As to jurisdiction of the subject matter, it seems that although the judgment may go beyond the issues and grant relief not asked for, or not within the competence of the court, yet it may be good for so much as the court had power and authority to include it." 34 C. J. 510.

Under this text there are cited a number of authorities from various jurisdictions; one from Kentucky, Highland Co. v. Audas, 110 S. W. 325, which was upheld in 6 Cir., 205 Fed. 862. The case of Joyes v. Hamilton, 10 Bush 544, 73 Ky. 544, upholds the principle stated, as does the more recent case of Carney v. Yocum's Heirs, 176 Ky. 173, 195 S. W. 482, which is cited with approval on principle, in Reed v. Runyan, 226 Ky. 261, 10 S. W. (2d) 824.

We are convinced that appellant has not made such

 

showing as would lead us to conclude that due to any procedural error pointed out, she may not take valid title to lots which she purchased under the original judgment, upon compliance with the terms under which she made the purchase, subject, in so far as the proceedings disclose, to the vendor's superior lien, as was adjudged by the court, hence the judgment is affirmed.