## JOSEPH F. BRUSKI AND OTHERS v. P. S. BRUSKI AND OTHERS.[1]

April 22, 1921.

No. 22,185.

**Equity will set aside decree of probate court obtained by fraud.**

1. Relief from a decree of the probate court, which was obtained by fraud or by reason of a mistake of fact, may be had by an action in equity in the district court.

**Findings supported by evidence.**

2. The evidence supports a finding that a final decree of distribution was not so obtained; that a written instrument purporting to be a relinquishment of a daughter's prospective right to inherit a portion of her father's estate was procured by the undue influence of the father, now deceased, and that another instrument of the same nature was not signed by a son of the deceased.

Action in the district court for Steele county to amend the final decree in the estate of Frank Bruski, senior, rendered in the probate court of Steele county and to require defendants to execute the necessary deeds to vest title to the described premises. The case was tried before Childress, J., who when plaintiffs rested denied the motion of defendants Martin and Louisa Larach to dismiss the action as to them on the ground that the complaint stated no cause of action and upon the ground that the facts were entirely inadequate to furnish any ground for relief against either of the defendants, made findings and ordered judgment in favor of defendants. Plaintiffs' motion for amended findings was denied. From an order denying their motion for a new trial as against P. S. Bruski and Louisa Larach, plaintiffs appealed. Affirmed.

*Mark H. Gehan*, for appellants.

*A. W. & F. W. Sawyer*, for respondents Louisa and Martin Larach.

LEES, C.

Frank Bruski died intestate in 1901, leaving a widow and six children.

[1]Reported in 182 N. W. 620.

He was the owner of real property in Steele county. The probate court entered a final decree of distribution on December 1, 1903, assigning his estate to the widow and children in the statutory proportions. The widow remarried in 1902, and died testate in 1917. She had no children by her second marriage. In January, 1919, the final decree of distribution of her estate was entered in the probate court. This action was brought in September following by two of the children, Joseph and Angela, against their brothers and sisters. The relief demanded was the amendment of the final decree distributing the father's estate so that the shares of some of the defendants would be materially diminished and other defendants wholly deprived of their shares in their father's estate. This appeal involves only the rights of two of the defendants, Louisa Larach and P. S. Bruski, known in the family as Peter. The theory on which the action was brought was that in 1894 these two had received money or property from their father, and, in consideration thereof, had wholly relinquished their potential right to inherit from him; that they had concealed these facts from the probate court and so procured the entry of the decree by fraud or by reason of a mistake of fact on the part of the court. The case was tried without a jury and the findings were that, when the defendant Louisa was about 16 years old, she had signed a written release of her prospective right of inheritance from her father and that her signature was obtained by undue influence and duress; that the defendant Peter had never signed a written instrument which released his interest in his father's estate, and that the final decree in question had not been obtained by fraud and was not the result of a mistake. Plaintiffs moved for a new trial as to these two defendants and have appealed from an order denying their motion.

A number of questions are discussed in the briefs, but we find it unnecessary to consider any except the sufficiency of the evidence to support the findings, for manifestly plaintiffs cannot prevail if the findings stand.

If the decree of the probate court was obtained by fraud or was the result of a mistake of fact, relief might be obtained in a court of equity. Pierce v. Maetzold, 126 Minn. 445, 148 N. W. 302; Leighton v. Bruce, 132 Minn. 176, 156 N. W. 285; Robinson v. Thomson, 137 Minn. 446, 163 N. W. 786; Savela v. Erickson, 138 Minn. 93, 163 N. W. 1029. We

are satisfied that plaintiffs wholly failed to prove either fraud or mistake.

The evidence showed that soon after Louisa's marriage her father conveyed 20 acres of land to her and her husband; that the land was then worth about $2,000, and that her husband was required to pay and did pay $1,000 for it. She was a 16-year-old girl whose parents had prevailed on her to marry against her will. By some arrangement, to which she was only a passive party, the land was so conveyed, and her signature to the relinquishment procured. At that time she was indifferent as to what she did, not caring to inquire into the details of the transaction between her husband and her father. The deed of the land was placed on record, and it was known to all the members of the family that the father had made the transfer, though probably the details of the transaction were not known. The paper Louisa signed was never in her possession. It was among her mother's papers when the mother died. It does not appear that it was called to the attention of the probate court when the final decree was entered, and neither does it appear that Louisa or any one else concealed from the court or from the plaintiffs the fact that there was such a paper in existence or that she and her husband had obtained land from her father for less than it was worth. Eighteen years after the decree was entered this attack was made upon it and is supported, so far as we have been able to discover, by no substantial evidence of the existence of either fraud or mistake. The evidence to which we have referred supports the finding that Louisa was induced to sign the relinquishment of her prospective interest in her father's estate by reason of undue influence when she was so young and in such a frame of mind that she did not comprehend what she was doing and was willing to yield to anything her father insisted that she should do.

The evidence showed that the defendant Peter had received $800 from his father in cash and personal property. There was no concealment of the fact from the other members of the family. The release he is alleged to have signed was also among his mother's papers at the time of her death. He testified that he had signed a receipt for $800, running to his father, acknowledging the payment of that sum as part of his share of his father's estate. He denied the genuineness of his signature purporting to appear on the release introduced in evidence by the plaintiffs. The

force of his denial was somewhat weakened by testimony tending to show that he had obtained possession of the paper after his mother's death to exhibit it to his wife in order to satisfy her that he would receive nothing from his parents' estate out of which she could hope to get an allowance for alimony in a divorce suit pending between them. However, there was sufficient evidence to support the finding that he had not signed this particular paper, but another, as he testified, and the evidence is ample to support the finding that, so far as he was concerned, there was no fraud practiced to obtain the final decree and that it was not entered by mistake.

Plaintiffs assert that the money and property received by Louisa and Peter were gifts in the nature of advancements. Section 7407, G. S. 1913, requires the probate court to hear and determine all questions as to advancements at the time of final settlement and to specify each advancement in the final decree of distribution. The decree in question contained no reference to the alleged advancements. With this as a foundation for his argument, plaintiffs' counsel contends that it conclusively appears that the probate court entered its final decree as it did, because of a mistake of fact or by reason of a fraudulent concealment of the facts, and that the finding to the contrary cannot stand. There is no merit in the contention. To sustain it, we would have to presume that the property and money were not intended as ordinary gifts inter vivos, but were to be charged as advancements against the distributive shares in their father's estate which Louisa and Peter were prima facie entitled to receive; that the facts surrounding the transactions between the father and his children were not disclosed to the probate court, and, if they had been, the court would have held that the gifts were in fact advancements and that there was sufficient written evidence thereof to satisfy the requirements of the statute. Manifestly we are not at liberty thus to pile presumption on presumption.

It appeared by practically undisputed evidence that after their mother died all the children got together and agreed upon a division of her estate with their stepfather and among themselves, and that in making the division each child who had received any money or property from the father was charged with the money or the value of the property and that the amount so charged was deducted from the share of each. This

is not covered by the findings and we only allude to it to show how devoid of equity is the claim of plaintiffs that these two defendants should not share in the distribution of their father's estate.

The order denying a new trial is affirmed.