# MAY BELLE WALDRON v. ALICE M. PAGE AND ANOTHER. WALDRON, INC. v. SAME DEFENDANTS.[1]

March 29, 1934.

Nos. 29,858, 29,859.

[1]Reported in 253 N. W. 894.

*Stinchfield, Mackall, Crounse, McNally & Moore* and *John M. Palmer,* for appellant.

*John C. Lauber,* for respondents May Belle Waldron and Waldron, Inc.

*Steuart & McCaughan,* for respondent Commercial Transfer & Storage Company.

### JULIUS J. OLSON, Justice.

Two negligence actions were tried together in the court below, a jury having been waived. The court made findings for plaintiff in each case against the defendant Alice M. Page but dismissed as to the defendant Commercial Transfer & Storage Company. Motions for new trials were denied, and defendant Page has appealed to this court from the orders so made. On appeal both cases have been submitted together.

A brief summary of the facts is as follows: The accident happened at the intersection of Eleventh street and LaSalle avenue in Minneapolis on August 19, 1932, between 11:00 and 11:30 a. m. The weather was fair, bright, and sunny and the pavement dry. There is a "stop-and-go" semaphore in the center of the intersection. It was operating at the time of the collision giving rise to the present actions.

LaSalle avenue is paved and at the point of intersection runs north and south. Eleventh street is also paved and crosses LaSalle avenue at right angles. Street car tracks are located upon Eleventh street, eastbound traffic being upon the southerly rails and westbound traffic being upon the northerly rails.

There is a sharp conflict in the evidence in respect of who was at fault. Appellant concedes this in her brief. There is also conflict as to whether the "stop-and-go" sign was operative in favor of or against the respective parties here directly involved.

Defendant Page was driving a Packard car on LaSalle avenue going northerly. One Jennings (an employe of the transfer company) was driving a Ford truck on Eleventh street going easterly. The testimony by and in behalf of appellant is to the effect that the "go" sign was operative as to her when she entered the intersection;

that she then proceeded northerly beyond the center, when her left rear fender and rear bumper were run into by Jennings' truck. There is other evidence to support that claim.  In behalf of Jennings it is claimed that he did not enter the intersection until the "go" sign was operative as to him; that he proceeded into the intersection at a low rate of speed, the truck being in low gear, he having stopped momentarily at the westerly boundary of the intersection to call attention to another driver that a blanket was dragging upon the ground from the running board; that he proceeded into the intersection and continued so to proceed until a moment before the impact, when he noticed the Packard car coming into the intersection from his right at a high rate of speed and that he thereupon practically stopped but that the right front end of his bumper was "clipped" by appellant's car as it came through; that the Page car was traveling at a rate of speed estimated by him between 25 and 30 miles per hour; that his speed did not exceed five to eight miles per hour; that he did not move an inch from the time of the impact until after he moved the truck later on, having left it to go over to the place where the Page car finally stopped.  It also appears from the evidence that defendant Page, immediately after the impact, swerved to her right, hitting the northeasterly corner of the curb at the intersection, the car then swinging violently to the west and across LaSalle avenue and the sidewalk on the west thereof and against and into the Waldron building, which is located upon the northwesterly corner of the intersection.  The car smashed through the front of the building a distance of some three feet, breaking window glass and otherwise damaging the building.  Jennings is supported in respect of his claim by the witness Campbell. The distance traveled by the Page car and the violence of its movements in its course after the impact have a bearing upon the cause that brought about the disastrous results.

Enough has been related here to indicate that there is a sharp conflict in the evidence as to who was the cause of the accident so that a decision by the trier of fact is binding upon us.

Appellant groups her argument and citation of authorities under two heads: (1) Whether the evidence is contrary to the finding

of negligence on the part of appellant and the finding against negligence on the part of respondent Commercial Transfer & Storage Company; and (2) the findings of the court upon the issue of damages.

Discussing these in the order in which same are covered in appellant's brief, it is obvious from what has been heretofore stated that the finding of negligence on the part of the trial court as to appellant cannot be disturbed. This disposes of this issue in both cases. In the Waldron, Inc. case damages are sought for injuries to certain items of personal property used and owned by that plaintiff in its business. It occupies the May Belle Waldron building as tenant and operates a dry cleaning and dyeing establishment thereat.

In respect of the measure of damages in that case, the general rule undoubtedly is, as claimed by appellant, that where there is a "tortious injury to property" the correct measure of damages "is the diminution in the value resulting from the injury." But where the destruction is partial only, if "the cost of restoring the property to its former condition is less than the difference in value, such cost is the proper measure of damages, for, in such case, this compensates the party injured." 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 2576a. In Keyes v. M. & St. L. Ry. Co. 36 Minn. 290, 294, 30 N. W. 888, 890, where plaintiff's horses had been injured by coming into contact with a wire fence wrongfully constructed by defendant across a public highway, the court said:

"Compensation is what the law aims to give in such cases. This is the value of the property if destroyed, and the actual and direct injury in other cases. * * *

"In a case like the present the owner is entitled to recover for the diminished market value of the animals after cure, so far as a cure was effected, and, in addition thereto, such expenses as he incurred in reasonable attempts to effect a cure, and a reasonable sum or compensation for the loss of the use of the horses while under treatment, provided the whole damages do not exceed the original value of the property."

Plaintiff sought and was allowed damages for reconditioning and repairing certain items of personal property by it owned and used

in its business. Every item of property that had been damaged and the expense of repairing or replacing destroyed parts was gone into with the utmost care on the part of appellant. No evidence was introduced to the contrary. The actual cost paid by plaintiff to restore the damaged articles exceeded the amount allowed by the trial court. No claim was made nor recovery permitted for the loss of use of the damaged property during the time of repair and reconditioning the same. The actual value prior to the accident far exceeded the cost of repair and replacements.

Mr. Waldron, vice president and managing officer of plaintiff's company, who had been such over a period of some nine years, testified as to the value of the items of property damaged. The damaged items consisted of an adding machine purchased by the company while Waldron was a managing officer thereof at a cost of $300. This he claims was wholly destroyed in the accident so as to make it impossible of repair. Before the accident he concluded that it was worth $200 to $245. After the accident it was worth no more than "a trade-in" value of about $45. Other items damaged were several office desks and chairs, the glass top of a desk, some desk lamps, a bookkeeper's chair, linoleum desk pad, linoleum on the floor, certain window shades, and an electric fan. These articles in all probability had little, if any, "market value," but all possessed actual value. They were, and prior to the accident had been, in daily use by plaintiff. As such the witness, who was in direct management of the business and had been such over a period of many years, was clearly competent to testify. Sodergren v. Nelson, 131 Minn. 466, 155 N. W. 760.

In the May Belle Waldron case damages were sought for injuries to her building caused by the same accident as has been hereinbefore mentioned. In her behalf it was shown that she paid more to have her building restored than the amount awarded her by the trial court. Mr. Leck, a man of many years' experience and to all appearances competent, testified that he had estimated the cost of repair at $515, but in actually doing the work found that the cost was $562.37. In his opinion the building was not worth any more after repair than it was before the accident.

In behalf of appellant there was evidence to the effect that the cost of making the necessary repair and restoration was only something like $309. But the person testifying upon that issue admitted that he had left out certain items that might properly be included. At any rate, there was a conflict in the evidence, and as such the determination of the trial court is final.

Here, as in the other case hereinbefore considered, the "basic principle of the law of damages is compensation for the loss sustained; and in order to give satisfaction measured with money, such rules are formulated as are thought best to accomplish this purpose." See anno. L. R. A. 1917A, 367. In Anderson v. Miller, 96 Tenn. 35, 33 S. W. 615, 31 L. R. A. 604, 54 A. S. R. 812, it was held that the measure of damages for partial destruction of a building by fire is the reasonable cost of restoring it so it will be as valuable as it was before, considering its age and depreciation; and it is not the cost of a new building the same as that destroyed. In Shrieve v. Stokes, 8 B. Monroe (Ky.) 453, 48 Am. D. 401, the measure of damages for the falling of the walls of a house by negligent digging and removing earth from lots adjoining plaintiff's premises was the cost of rebuilding the old wall, not the cost of a new wall. See also Empire Mills Co. v. Burrell Eng. & Const. Co. 18 Ga. App. 253, 89 S. E. 530; Harrison v. Kiser, 79 Ga. 588, 4 S. E. 320; Freeland v. City of Muscatine, 9 Iowa, 461; Lexington & E. Ry. Co. v. Baker, 156 Ky. 431, 161 S. W. 228; Fitz Simons & Connell Co. v. Braun & Fitts, 199 Ill. 390, 65 N. E. 249, 59 L. R. A. 421. This court in Hueston v. Mississippi & R. R. R. Co. 76 Minn. 251, 255, 79 N. W. 92, 93, stated:

"In its last analysis the measure of plaintiff's damages was the difference between the value of the premises immediately before and immediately after the infliction of the injury. Upon the trial, evidence was introduced of this ultimate fact, and also as to the nature and amount of the particular items of damage; as, for example, the nature and extent of the injury to the mill machinery by the mud and water, the value of the use of the mill during the time it was shut down, the injury to the wall of the tail-race, and what it would cost to repair or restore the same, the extent and duration of the

injury to the pasture land, and what the pasture in its former condition was reasonably worth.

"It is urged that this was admitting evidence under two different and separate methods or rules for the assessment of damages; that the plaintiff should have been compelled to adopt one or the other. On the contrary, we think the evidence was all admissible as tending to prove the same thing, viz. the damages to the premises by reason of the trespass. It is the most common thing in the world, in the trial of actions of this and analogous classes, to ask a witness how much less, in his opinion, the premises were worth after the injury than they were before, and then to particularize by introducing evidence as to the nature and extent of the different items which go to make up this estimated total diminution of value; and we never before heard this method of proving damages objected to."

See also Chambers v. Cunningham, 153 Okl. 129, 5 P. (2d) 378, 78 A. L. R. 905, and anno. 910, et seq; Bader v. Marlin, 160 Wash. 460, 295 P. 160, 78 A. L. R. 914, and anno. 917, et seq.

The theory in both cases in the court below was in conformity with the rule of damages here discussed. No other theory was suggested. We conclude that the trial court properly disposed of both cases, and the orders here under review are affirmed.

