IN RE TRUSTEESHIP UNDER LAST WILL OF HANS L. MELGAARD, DECEASED.
MIDLAND NATIONAL BANK & TRUST COMPANY OF MINNEAPOLIS AND ANOTHER, APPELLANTS.[1]

August 6, 1937.

No. 30,879.

[1]Reported in 274 N. W. 641.

494

*Ueland & Ueland* and *Cobb, Hoke, Benson, Krause & Faegre,* for appellants.

*Bowen, Best, Flanagan & Rogers,* for Agnes L. Melgaard, Irene Melgaard Hauser, Ruth Melgaard Sill, Mildred Melgaard Rees, Harold L. Melgaard, and Carmen E. Melgaard, respondents.

*Mortimer H. Boutelle, A. H. David,* and *M. H. Strothman, Jr., amici curiae,* filed a brief in behalf of the contention of respondents.

STONE, JUSTICE.

Appeal by Midland National Bank & Trust Company of Minneapolis and Hardin Helland, two of three trustees of a testamentary trust, who, for convenience will hereinafter be referred to as petitioners, from an order of the district court (appealable under the rule of In re Will of Rosenfeldt, 184 Minn. 303, 238 N. W. 687) vacating ten earlier orders (settling annual accounts and approving certain actions of the trustees) and surcharging their final account on 13 items aggregating $33,439.69.

Hans L. Melgaard died testate October 7, 1923. His will was admitted to probate in Hennepin county. The petitioners and his wife, Hulda E. Melgaard, were the executors. They were also named as trustees of the express trust established by the will. That trust is the subject matter of this litigation. November 24, 1924, their appointment was confirmed by an order of the district court. The residue of the estate was taken by the trustees under conditions which need not be stated in detail.

The property subject to the trust consisted of certain real estate and stock in several banks situated in northwestern Minnesota. The par value of that stock was $54,300.

The six children of Mr. Melgaard were the beneficiaries of the trust, subject to the life interest of their mother. They were Agnes L. Melgaard, Irene M. Melgaard Hauser, Ruth E. Melgaard Sill,

Mildred D. Melgaard Rees, Harold L. Melgaard, and Carmen E. Melgaard. The two last named were minors at the time of the father's death. Their mother had been named in the will as their guardian and was appointed such by the probate court.

Annually, beginning with 1926 until and including 1929, the trustees petitioned the district court for the settlement of their detailed annual accounts. In each such case all beneficiaries consented in writing to the allowance of the account, each consent accompanied by express approval of the actions of the trustees evidenced by the account in question. There is no suggestion that any of the accounts was defective either in form or substance, or otherwise than a correct and full statement of the doings of the trustees during the period covered thereby, during all of which the attorney for the trustees had been Walter U. Hauser, husband of the objector Irene M. Melgaard Hauser. He it was, in the main at least, who procured for the trustees the consents of the beneficiaries to the allowance of the preliminary orders.

Beginning with one of April 30, 1925, and concluding with one of April 23, 1930, the three trustees, Mr. Hauser acting as their attorney, procured 11 other orders from the district court. Each was consented to in writing by all the beneficiaries, by the minors through their guardian. These orders authorized disposition of trust property, surrender of some bank stock, payment of assessments on others, and the mortgaging of land belonging to the trust.

Finally, in April, 1931, the petitioners filed the petition which launched the present proceeding. They tendered therewith their resignation and final account, asking its approval. That petition met with formal "answer and objections" of the beneficiaries. A separate answer was filed on behalf of Harold L. Melgaard and Carmen E. Melgaard setting out the same objections as their co-beneficiaries and pleading their recent minority.

The widow, Hulda E. Melgaard, filed separate objections. So far as now important, they follow those of the beneficiaries. Before the trial Mrs. Melgaard died. Her administrator has been substituted in her stead.

In December, 1931, the objectors moved for an order for an inspection of all records of the trustees. That motion was in part denied by an order of June 24, 1932, upon the ground that the evidence sought for "could not be material, because the answers and objections of the beneficiaries do not afford a basis for surcharging the account in question so long as * * * the four orders of this court allowing the intermediate accounts of the trustees stand in full force and effect." Thereafter the petitioners filed their reply to the objections. Among other things, they pleaded, in bar to the objections, the prior orders settling their annual accounts and authorizing certain other actions complained of.

Finally came the fourth and final pleading. It was in the nature of a replication by the objectors to the second pleading by the petitioners. In substance, it was a denial of the new matter therein. In addition, it averred only that "if" the preliminary orders "are of any effect whatsoever the same * * * were fraudulently obtained and should be vacated and set aside."

At the trial counsel for objectors, "subject, of course, to our position that we do not believe the orders amount to anything," got leave to amend the prayer of their original objections as indicated by this request: "If the court should hold them [the orders] to be prima facie valid, in such case we ask for the relief that they be set aside, and ask that the objections be amended accordingly." The trouble is that the pleading so amended, as to its prayer for relief only, contains nothing attacking the orders as orders.

In their original "objections" the objectors took an attitude towards the "preliminary orders" which may be thus summarized: They admit that petitioners have from time to time obtained the orders; that they (objectors) signed consents at the request of petitioners, but aver that it was upon the representation that it was their duty and obligation to do so; that petitioners failed to disclose to objectors, and fraudulently concealed from them, the fact that the petitions for the various orders contained their express consent and approval of the matters referred to therein; that they were *ex parte* orders, the court in signing them having no knowledge concerning any of the fraudulent conduct of petitioners

and of their independent financial interests and no knowledge of the details of the various transactions represented by the petitioners. Objectors then, as far as words may do so, "disaffirm and rescind" all their "consents."

The fraud charged consists, as to the Midland bank, in the main of concealment of its interest as a creditor of some of the banks, assessments on the stock of which were paid by the trustees. That sort of thing is charged also against Mr. Helland, with the additional claim that he was personally interested, adversely to the trust, as a large stockholder in one of the banks. All of them closed during the epidemic of the '20's fatal to so many banks. (It has not been made to appear how in any way the trustees could have escaped the necessity for paying, involuntarily, the equivalent of the assessments they paid voluntarily.)

On the side, the facts go far to show why commercial banks should keep out of the investment and trust field. In times of financial stress, any such bank, with much of a trust portfolio, is almost sure speedily to come into a predicament when its own broad banking interest is in conflict, either real or apparent, with its strict duty as trustee. If such opposition of interests results in litigation wherein a trier of fact holds against them, they will have only themselves to blame. The predicament will be of their own making.

We do not state either facts or issues in more detail because we see no escape from deciding that the district court had jurisdiction to make the preliminary orders; they were in essence judgments; and the objectors must fail because their attack on such orders is collateral and not direct.

■ At the outset there is argument, advanced by *amicus curiae*, which challenges the jurisdiction of the district court, by mere order (or anything short of a decree binding *in personam* on all the beneficiaries, in a "plenary suit instituted in accordance with recognized equity practice") to settle any account of a trustee and discharge him *pro tanto* from further liability to the beneficiaries.

What a court may settle and whom it may bind by order or judgment depends on its overlying jurisdictional competence for the

task and (actions *in rem* aside) its jurisdiction of the parties. It must have both. Both were present here.

True, in the absence of statute, a trustee may be discharged from liability only by (1) effective formal release, (2) operation of law, as by estoppel of the beneficiaries, or (3) a decree of a court of equity. Hill on Trustees, 608. The trustee relief act of England passed in 1847 (10 and 11 Vict., c. 96) altered the law there. L. 1933, c. 259, 3 Mason Minn. St. 1936 Supp. §§ 8100-11 to 8100-16, entitled "An act relating to procedure in connection with the administration of trusts," was not in effect during the period here determinative.

But operative since 1875 (L. 1875, c. LIII) has been our statute, 2 Mason Minn. St. 1927, § 8090, declaring that "express trusts created under the provisions of this paragraph shall be administered under the direction of the court." The Melgaard trust was created under the provisions of that statute insofar as the corpus of it consisted of chattels.

District Court Rule No. 28, 186 Minn. xxxiv, adopted in 1932, requires "every trustee subject to the jurisdiction of the district court" to file an annual account, and provides for hearings thereon upon notice to beneficiaries or their guardians. What may be done with propriety by all the district courts under that rule could have been done before by any one of them. The rule could confer no new power. Its purpose was but to regulate the exercise of existing power.

We assume (L. 1933, c. 259, put aside as it must be for this case) that, either with or without that rule, the district court cannot bind beneficiaries without jurisdiction of them *in personam*. One purpose of the new law of 1933, making the proceeding *in rem,* is to dispense with the necessity for jurisdiction *in personam*.

Back of all our statutes concerning court procedure is the declaration of the state constitution, art. 6, § 14, that "legal pleadings and proceedings in the courts of this state shall be under the direction of the legislature." So where a trustee disposes of trust property under the "direction" of a district court by an order made with

jurisdiction *in personam* of the beneficiaries, there can be no question of its power to give the direction.

There may be such a general judicial power with no jurisdiction in a given case for its exercise. The factor of jurisdiction is furnished for this case by the written consents of the beneficiaries. Such consents were not only agreements to issuance of the orders but also general appearances by the beneficiaries (in each proceeding terminated by one of the orders) conferring on the court jurisdiction of them *in personam* to issue the orders.

The declaration of the statute, § 8090, that express trusts created under paragraph 5 thereof shall be administered under the direction of the court, does not stand alone. Section 8100 sets up a procedure whereby, without an action but only by special proceeding, trustees may get an order of the court authorizing and directing the distribution of trust property. In such a proceeding, § 8100-1, "the district court of the county wherein the property, whether real or personal, or any part thereof, held in trust is situate may, by order, on such terms and conditions as seem just and proper, authorize" any trustee "to sell or otherwise dispose of, mortgage or pledge all or any part of such trust property, whether real or personal." Again, in § 8100-6, it is declared that if the petition of the trustee is granted "the final order shall authorize the sale or other disposition * * * of trust property * * * in manner and upon such terms as the court may prescribe." There is a provision that the trustee shall report the transaction to the court for confirmation and that it shall be confirmed "before the same shall became effective and valid." If such a proceeding is in compliance with the statute, the orders, the intention is, shall have all the finality of the most solemn judgment. §§ 8100-7 and 8100-9.

By § 8103 it is declared that upon the death of the surviving trustee of an express trust the trust estate shall not descend to his heirs, nor pass to his personal representatives, but that instead the trust, to the extent that it is unexecuted, shall vest in the district court "with all the powers and duties of the original trustees, and shall be executed by some person appointed for that purpose, under the direction of the court." Under § 8104 the court is given power

to accept the resignation of a trustee and discharge him. Under § 8105, upon the complaint of any person interested, "and under such regulations as shall be established by the court for that purpose," the district court may remove an insolvent or unfaithful trustee. Finally, under § 8106 the district court is declared to have "full power to appoint a new trustee in place of one deceased, resigned or removed."

Among our general statutory provisions concerning trust companies is § 7741. Its mandate is that every trust company "shall be subject at all times to the further orders, judgments, and decrees of any court of record from which it shall have accepted any trust, appointment, or commission as to such trust, and shall render to such court such itemized and verified accounts, statements, and reports as may be required by law, or as the court shall order in relation to a particular trust. It shall also be subject to the general jurisdiction and authority of the district court of the county of its principal place of business." In the instant case, pursuant to a long-established practice in Hennepin county, the probate court refused distribution of the residue of the Melgaard estate to the trustees until their appointment was formally confirmed by the district court of Hennepin county. It was so confirmed by order. While we do not base decision thereon, the argument may have merit that in the administration of the Melgaard trust the Midland National Bank & Trust Company was generally subject to the supervisory power defined by § 7741. True, there was then no statute requiring the confirmation of its appointment by the district court. But the probate court, by action not now under attack, made such confirmation by the district court a condition precedent to the assignment of the trust property to the trustees.

Having satisfied ourselves that the district court had both the general power over the subject matter and the special jurisdiction *in personam* to make the orders, the protection of which is claimed by the appealing trustees, we proceed to examine their effect as to finality or the lack of it.

It being plain that an express trust of personalty shall be administered under the direction of the court, it must follow that

such direction, as long as it stands, binds both trustees and beneficiaries when given by an order made upon petition of the trustees, plus notice and opportunity for hearing to the beneficiaries. Directions so given must have finality or they are futile. Worse, they would be a means of entrapment, at times of the trustee, and at others of the beneficiaries. Two-edged is the argument that such directions have no finality. If in some cases the beneficiaries may lightly set them at naught, in others the trustee may adopt a similar course.

As far as the involved orders are directions for the disposition of specified property the trustees were bound. Equally so were the consenting beneficiaries. The same conclusion is inescapable as to the four orders allowing annual accounts.

A judgment has been well defined as "the final consideration and determination of a court of competent jurisdiction upon the matters submitted to it, in an action or proceeding." 15 R. C. L. 569. Why should not the so-called preliminary orders, all of them, be considered judgments rendering their subject matter *res judicata?* There was jurisdiction of subject matter and of the parties; there was submission of matter for decision, and decision on the merits. There was no contest or trial, but what of it? There was opportunity for contest and trial. That is sufficient. 15 R. C. L. 953.

That a judgment is "based upon an agreed statement of facts, or if it could be considered a consent judgment, does not lessen its force or effect." Woods Brothers Const. Co. v. Yankton County (C. C. A.) 54 F. (2d) 304, 308, 81 A. L. R. 300. That case applied the rule: "A judgment by consent or agreement operates as a waiver of all defects or irregularities in the process, pleadings, or other proceedings previous to the rendition of the judgment, except such as involve the jurisdiction of the court," citing, *inter alia,* Burgess v. Seligman, 107 U. S. 20, 2 S. Ct. 10, 27 L. ed. 359; Nashville C. & St. L. Ry. Co. v. United States, 113 U. S. 261, 5 S. Ct. 460, 28 L. ed. 971; Harding v. Harding, 198 U. S. 317, 25 S. Ct. 679, 49 L. ed. 1066; Swift & Co. v. United States, 276 U. S. 311, 48 S. Ct. 311, 72 L. ed. 587.

It is essential in order that a judgment shall render its subject matter *res judicata* that its estoppel be mutual. In this case the bar of estoppel of the preliminary orders operates alike on both trustees and beneficiaries. See 15 R. C. L. 956. Suppose the orders in question settling annual accounts of the trustees reflected payments by the latter to the beneficiaries? Clearly those orders would bar an action by the trustees against the beneficiaries to recover the payments.

Except for the background of jurisdiction *in rem* rather than *in personam* as in the instant case, annual accounts of executors and administrators stand on the same footing, as to the question of *res judicata,* as the annual accounts of these trustees. The former, "when once settled and approved," are "only subject to direct attack by motion to open or other like remedy." In re Estate of Pratt, 119 Cal. 156, 157, 51 P. 47; Kittson v. St. Paul Trust Co. 78 Minn. 325, 81 N. W. 7. The same rule applied . as to "consent orders" settling annual accounts of a trustee. In re Estate of Allis, 191 Wis. 23, 209 N. W. 945, 210 N. W. 418.

If, as respondents argue, and we think correctly, each proceeding resulting in an order was *in personam,* not *in rem,* the order ended it. It was a judgment with all the definitive effect characteristic of judgments (but as an order appealable, In re Will of Rosenfeldt, 184 Minn. 303, 238 N. W. 687). The subject matter became thereby *res judicata.* We so hold. It matters not what such a decision is called, order, judgment, or decree. The mere label is unimportant. In Wann v. Northwestern Trust Co. 120 Minn. 493, 497, 139 N. W. 1061, 1063, without action, in a mere "proceeding" begun by petition of the trustee, it procured the allowance of an annual account. The order of allowance was called a "decree." What it was called could lessen neither the jurisdiction of the court nor the effect of the decision which had been made by consent. But (citing Kittson v. St. Paul Trust Co. 78 Minn. 325, 81 N. W. 7) the "decree" was held "conclusive, in the absence of fraud." (The Wann case was a direct attack by action on the "decree" so-called.)

■ We next examine what is meant by the statement that a judgment is "conclusive, in the absence of fraud." Of course, fraud

vitiates judgments as well as contracts, but the process is even less automatic in the case of the latter than the former. Fraud does not automatically avoid a contract. It renders it voidable, and the contract stands until avoided. So, too, as to a judgment procured by fraud. It stands until vacated in a proceeding adequate to the purpose. In that respect, United States v. Throckmorton, 98 U. S. 61, 65, 25 L. ed. 93, has been misapplied in argument. That case was a direct attack, by bill in chancery, upon the confirmation of a Mexican land grant. Such confirmations were voidable for fraud. Notwithstanding, the decision of the circuit court sustaining a demurrer to such a bill and dismissing it on the merits was affirmed. The "admitted exception" to the general rule referred to by the court applies in cases where, by reason of something done by the successful party to a suit, there was, in fact, no adversary trial or decision of the issue in the case. As is plain from the context, that exception can operate only in cases of direct as distinguished from collateral attack. It has nothing to do with distinguishing between direct and collateral attacks. It has its sole application in direct attacks, with the result that in such a case the absence of actual contest may facilitate vacation of the judgment.

The same qualification necessarily attends the now classic distinction made in the Throckmorton case between fraud "intrinsic" in the judgment and that which is "extrinsic." That distinction, as applied by the court (in citing and following Greene v. Greene, 2 Gray [Mass.] 361, 61 Am. D. 454), applies only to [98 U. S. 68] "the acts for which a court of equity will on account of fraud set aside or annul a judgment or decree," that is, where a judgment is under direct attack on ground of fraud.

The rule of United States v. Throckmorton, 98 U. S. 61, 25 L. ed. 93, does not touch the question whether an attack is collateral or direct. Only after it has been determined, by other and appropriate standards, to be direct attack, on the ground of fraud, can the distinction between that which is extrinsic and that which is intrinsic find the subject matter for its operation. In order to be open to collateral attack, a judgment must be void on the face of the record, as for want of jurisdiction. Leland v. Heiberg, 156

Minn. 30, 194 N. W. 93; In re Estate of Sutton, 161 Minn. 426, 201 N. W. 925; 1 Freeman, Judgments (5 ed.) p. 633, § 318.

In In re Baker's Estate, 61 N. J. Eq. 592, 47 A. 1046, 1047, there was a direct attack, in the court which made them, on consent orders (called "decrees") which had settled intermediate accounts of trustees. The court said [61 N. J. Eq. 596]:

"Whether the three accounts, the allowance of which was disturbed after a long lapse of years, were, strictly speaking, mere intermediate reports of the condition of the trust fund and its income, or were, in fact, settlements of a final and decisive character as to what was included in them, is a question of some moment, but not necessary to decide in this cause." But later it added [61 N. J. Eq. 598]: "The general practice of presenting and procuring the allowance of intermediate accounts was recognized in the court of errors in Jackson v. Reynolds, 39 N. J. Eq. 313. It was decided that such an account was to be taken as, *prima facie*, correct, and not to be corrected or opened, except upon evidence of error, but that when it disclosed an allowance which was clearly erróneous on its face, the error might be corrected, and that such correction might be made *in a direct proceeding* attacking it for such error." (Italics supplied.) See also Griggs v. Shaw, 42 N. J. Eq. 631, 9 A. 578.

It is significant that the correct method of attack indicated in In re Baker's Estate is direct and not collateral. So there is some ambiguity as to what the court meant by *"prima facie* effect."

When under direct attack for extrinsic fraud, a judgment has just *prima facie* effect—no more—save that such weight may be somewhat greater and therefore require more or better evidence to overcome it than in the conventional case of *"prima facie* effect." An illustration of the latter is the effect automatically attending a negotiable instrument in a suit thereon. After all, it is not the effect of a judgment that immunizes it to collateral attack, but the mere fact that it is a judgment. If the attack be direct, it has, to the extent just indicated, only a *prima facie* effect in that action. Otherwise it would not be subject even to direct attack. So the

initial inquiry is whether the thing is a judgment. That determined, its effect becomes immaterial, except in cases of direct attack for extrinsic as distinguished from intrinsic fraud. United States v. Throckmorton, 98 U. S. 61, 25 L. ed. 93.

■ For the objectors, there is argument that the preliminary orders have no result other than that of creating a mere presumption. That argument is based on misconception of a statement in the decision of Kittson v. St. Paul Trust Co. 78 Minn. 325, 330, 81 N. W. 7, 9, wherein intermediate accountings by an executor were involved. Concerning them the court said:

"It is generally held that when such accountings are ex parte, or when the beneficiaries are minors not properly represented, such intermediate accountings are only prima facie evidence of their correctness. See the cases cited in 11 Am. & Eng. Enc. (2 ed.) p. 1310, note 6. Some of the cases also hold that such an accounting is conclusive only against those who actually contest it. *Id.* In our opinion such an accounting is conclusive on all of those contesting it who were not under disability, and on all of those under disability who were properly represented by guardians."

We have examined the cases referred to in support of the statement concerning the *prima facie* effect of such orders. The majority of them involve real *ex parte orders,* made without notice to or appearance by consent or otherwise of the party or parties seeking to ignore or impeach them. Pearson v. Darrington, 32 Ala. 227; In re Runyon's Estate, 53 Cal. 196; Clifford v. Davis, 22 Ill. App. 316; Collins v. Tilon, 58 Ind. 374.

That statement as to *prima facie* effect is correct when applied as a rule of guidance in cases of direct attack upon the intermediate account, in which case the presumption is in favor of their validity and binding effect. See In re Baker's Estate, 61 N. J. Eq. 592, 47 A. 1046. On the other hand, the true rule is that accounts, when once judicially settled and approved, are only subject to direct attack by motion to open or other like remedy. In re Estate of Pratt, 119 Cal. 156, 51 P. 47; Kittson v. St. Paul Trust Co. 78 Minn. 325,

81 N. W. 7; Wann v. Northwestern Trust Co. 120 Minn. 493, 139 N. W. 1061.

The argument for objectors goes wrong in the premise, necessary to its validity, that the orders now questioned were made *ex parte*. They were not. We stress again the determinative fact that they were made with personal jurisdiction of the beneficiaries, who were given opportunity for a hearing. They not only waived a hearing, but also consented that the orders be issued. An order or judgment made upon such consent is not an *ex parte* affair. State v. Cox, 87 Ohio St. 313, 101 N. E. 135; State ex rel. Gardiner v. Dickman, 175 Mo. App. 543, 157 S. W. 1012; Ex parte City of Covington, 176 Ky. 140, 195 S. W. 439. (Literally, such judgment is *ex parte, i. e.*, on behalf of all who consent thereto.) It is not the actual hearing or contest that is important. It is the opportunity to contest that is determinative, and, if given, sufficient.

It is true that there are many cases of controversy as to the wisdom of suggested action of a trustee where there is room for choice by him and where the circumstances may be such that the duty to make the choice cannot be shifted to the court. See City Bank Farmers Trust Co. v. Smith, 263 N. Y. 292, 189 N. E. 222, 93 A. L. R. 598. But after the court has acted and made an order upon application of the trustee, it is too late, by collateral attack, to question the order, particularly where it is made by consent of the beneficiaries, upon the ground that the trustee was not entitled to the order.

The distinction between collateral and direct attack on judgments is no mere matter of pleading or procedure. It is substantive and not adjective, although pleadings, of necessity, must frequently have a controlling effect in its application. The rule is just as much matter of substantive law as that of *res judicata.* "To say that a particular party cannot collaterally attack a judgment is practically the same thing as saying that as to him such judgment is res judicata." 15 R. C. L. 958.

It facilitates identification of collateral assault on a judgment first to understand what is direct attack. The latter has been defined as any attempt by "appropriate proceedings * * * to

have it annulled, reversed, vacated, or declared void." See 3 Words & Phrases (1 ser.) 2070; 2 *Id.* (2 ser.) 46. That leaves untouched the sometimes difficult question of what are "appropriate proceedings." An appeal, writ of error, or proper motion is a direct attack. So also is a bill in equity to annul the judgment or a proper action under our statutes. 2 Mason Minn. St. 1927, §§ 9283 and 9405. The latter remedy is not exclusive but only concurrent with the remedy by motion. Geisberg v. O'Laughlin, 88 Minn. 431, 435, 93 N. W. 310.

In the instant case there has been neither action nor motion. At most and best, all of pleading there has been is a conditional suggestion (aside from the ineffectual amendment at the trial) that, if they had any "effect whatsoever," the orders in question "should be vacated." That did not appear until the fourth pleading, the second by the objectors. The proceeding is itself collateral to those in and by which the orders were procured. The attack on the orders is not only conditional but also collateral, factually secondary, to the objectors' effort to surcharge the trustees.

The usual mass of case law presents no disagreement as to the rule but some as to the precise line of demarcation between what is collateral and what direct attack. Our study of the cases, but a few of which will be cited, presents two opposed and extreme views, neither of which commends itself to us.

At one extreme are decisions that the attack is direct only when made in an action for the sole purpose of annulling the judgment. Gardner v. Howard, 197 Ky. 615, 247 S. W. 933; Combs v. Deaton, 199 Ky. 477, 251 S. W. 638; Hester v. Hester, 103 Miss. 13, 60 So. 6, Ann. Cas. 1915B, 428; Henderson v. Towle, 23 Ariz. 377, 203 P. 1085. It appears from the language of some courts adhering to that rule that if any other relief is sought the attack is collateral. Hester v. Hester and Henderson v. Towle, *supra.* But there is language in one such case which casts doubt on the proposition. Combs v. Deaton, 199 Ky. 477, 251 S. W. 638, was an action in ejectment. The complaint set up the invalidity of a prior judgment under which defendant claimed. Defendant's answer asserted validity for the judgment. It was held that the attack by the com-

plaint was collateral because not brought for the "sole" purpose of destroying the judgment. But doubt was cast on "sole purpose" as an essential by a statement that the "primary" relief sought was recovery of the land, and voiding the judgment was only "incidental" thereto. Such language leaves room for argument that, even where the requirement is that annulment be the "sole" purpose, the attack is nevertheless direct if such annulment be the "primary" purpose, or something more than an "incidental" one.

At the opposite extreme is at least one case, Richardson v. Carr, 68 Okl. 46, 171 P. 476. There plaintiff sued to quiet title, alleging that defendant claimed through a sale under a judgment void for want of jurisdiction. The court stated that when pleadings make an issue whether a judgment should be annulled the mere fact that they present an issue, even incidentally, as to whether the assailant is entitled to annulment of a judgment, does not prevent the attack from being direct. In that aspect the case seems to stand alone. Adherence to such a rule would go far to extract the essential element of finality from judgments.

Less extreme are decisions that the attack is direct when the action or proceeding is brought for the very (or express) purpose of overturning the judgment. Dafoe v. Berry, 113 Neb. 3, 201 N. W. 676, 677; Morrill v. Morrill, 20 Or. 96, 25 P. 362, 11 L. R. A. 155, 23 A. S. R. 95. Some such cases hold that if an action has an independent purpose and contemplates some other relief, although overturning the judgment may be important or even necessary to its success, the attack is collateral. Dafoe v. Berry, *supra;* Rowe v. Silbaugh, 96 Wash. 138, 141, 164 P. 923, L. R. A. 1918D, 466 (holding that a complaint in an action to quiet title, which challenged the judgment under which the defendant claimed, was a collateral attack thereon, and the case not "an appropriate action" for vacation of that judgment). But even under this rule it is not always made clear whether the inclusion in the action of any other purpose, however incidental, than that of attacking the judgment, would make the attack any the less direct. From the language in at least one case it is arguable that, as long as the main purpose under this rule is the setting aside of the judgment, the attack remains direct.

Dafoe v. Berry, 113 Neb. 3, 201 N. W. 676. It was on a petition by a subsequently appointed guardian of an incompetent attacking the order of another county court appointing defendant to the same position. The prayer asked nullification of that order and for restitution of incompetent's property in the hands of defendant. In holding the attack collateral the court said [113 Neb. 7]:

"From the prayer of the petition, it is evident that, in this proceeding, the first end to be attained is to collect from Mrs. Berry [defendant], or her sureties, the funds now in her hands, the property of the ward, and the annulment of her letters of guardianship is a matter of only secondary consequence."

Such language leaves unanswered the important query whether, even where the requirement of direct attack is that it must be made in an action brought for the very or express purpose of setting aside the judgment, the attack remains direct notwithstanding the inclusion of another purpose, so long as the attack is the main or primary one.

In view of the right of litigants to proper joinder of causes of action, in complaint or counterclaim, we cannot adhere to what may be termed the "sole purpose" rule. Neither can we go to the other extreme and say that, when in the pleadings a bothersome judgment is merely questioned, or its validity conditionally and secondarily attacked, as here, the assault is direct rather than collateral. That would allow annulment, not only of the judgment, but also of the rule itself. That we cannot permit.

The right to vacation of a judgment, which bars relief, is in itself an independent cause of action in equity or under our statutes. Therefore, if a defendant wants such relief, his direct attack must be made, if possible, by adequate answer in the nature of a cross bill. See Vaule v. Miller, 69 Minn. 440, 72 N. W. 452. No case has been found permitting either party to delay his attack until a deferred and subsequent pleading as here, and then by mere conditional prayer for relief, secondary and incidental to his primary and main position, without sufficient substantive amendment of complaint or answer, to get himself into the legal position of a direct

assailant of the judgment, not void but voidable only, which bars his progress.

Our conclusion is that, while vacation of the objectionable judgment need not be the sole purpose of the objecting litigant, it must be the initial and primary objective as distinguished from one which, as here, is incidental and secondary, that is, collateral, to something else. Here the attack, as far as it was direct rather than secondary, incidental and much postponed, was at most an effort by the objectors to "rescind" their consents to the orders. One can rescind neither a judgment against him, nor the consent, or evidence or jurisdiction upon which it is based.

We have not overlooked the fact that two of the objectors were minors when some of the orders were consented to by their guardian, who was one of the trustees. That does not subject them to collateral attack. For the reasons given, we hold this is a collateral attack, by the objectors, on those orders, and so must fail.

The 11 orders in question must stand until vacated or modified in a direct attack.

The order under review will be reversed and the cause remanded for further proceedings not inconsistent with this decision.

So ordered.

PETERSON, JUSTICE (dissenting).

1. The pleadings have been misconstrued by this court. Defendants asked leave upon the trial to amend the answer so as to grant affirmative relief, vacating and setting aside all the orders allowing the annual accounts and the consents upon which such orders were based, and the court expressly granted the motion to amend the pleadings in this respect. This being true, the answer as amended set up a counterclaim to vacate and set aside the orders and consents and to surcharge the trustees. A defendant who pleads a counterclaim is, as to the counterclaim, considered as if he had brought an action. The counterclaim is in the nature of a complaint by the defendant against the plaintiff. 5 Dunnell, Minn. Dig. (2 ed.) § 7598, and cases cited in note 15. The rule is that a cross complaint or cross bill asking affirmative relief against a judg-

ment is a direct, not a collateral attack, on the judgment. 34 C. J. p. 524, § 829, notes 82 and 83; Northwestern & P. H. Bank v. Ridpath, 29 Wash. 687, 70 P. 139; Wilson v. Hawthorne, 14 Colo. 530, 24 P. 548, 20 A. S. R. 290. This case is one involving a direct attack upon the orders and should be so considered.

2. That a judgment or order allowing or confirming a trustee's account may be attacked by a beneficiary upon the grounds of fraud or mistake is settled by prior decisions of this court. In Wann v. Northwestern Trust Co. 120 Minn. 493, 497, 139 N. W. 1061, it was held that a decree discharging a trustee is conclusive, "in the absence of fraud," and that it may be attacked for fraud. Other cases sustaining this rule are Kittson v. St. Paul Trust Co. 78 Minn. 325, 81 N. W. 7; Bruski v. Bruski, 148 Minn. 458, 182 N. W. 620. In In re Will of Rosenfeldt, 185 Minn. 425, 432, 241 N. W. 573, 576, the court said: "The findings are that fraud or mistake of fact induced the consent of the beneficiaries and the orders referred to of the probate court. Such being the fact, the orders would be vulnerable to a direct attack." That case involved a direct attack on the orders. The authorities generally lay down the rule that a decree settling the accounts between a trustee and a beneficiary may be attacked for fraud, accident, or mistake. 65 C. J. p. 941, § 862; 4 Bogert, Trusts & Trustees, p. 2841, § 973; Pinckney v. Hudson County Nat. Bank, 112 N. J. Eq. 376, 164 A. 269. In In re Willing's Estate, 288 Pa. 337, 343, 135 A. 751, 752, the court said: "Irrespective of any legislation, the orphans' court possesses an inherent discretionary power 'to correct its own records in the interest of justice, even to protect parties from the effect of their own mistakes and blunders.'" To same effect, Withington v. Fidelity & Casualty Co. 237 Mass. 73, 129 N. E. 418; Johnson v. Eicke, 12 N. J. L. 316; In re Baker, 61 N. J. Eq. 592, 47 A. 1046; Boyd v. Caldwell, 95 Ind. 392; Barnes v. Gardiner, 140 App. Div. 395, 125 N. Y. S. 433; Aldrich v. Barton, 138 Cal. 220, 71 P. 169, 94 A. S. R. 43; In re Lawson, 215 Iowa, 752, 244 N. W. 739, 88 A. L. R. 316. Assent to the allowance of the account given by a beneficiary under mistake of fact or procured by fraud does not prevent the beneficiary from attacking the order or judgment upon the grounds of fraud or

mistake. Withington v. Fidelity & Casualty Co. 237 Mass. 73, 129 N. E. 418.

A sufficient reason for permitting such attack upon such orders and judgments is that all the matters between the trustee and the beneficiaries are disposed of by the order or judgment except the fraud or mistake. The latter are not raised in the accounting proceeding and present new controversies to be determined by the courts. The rule is well stated by Circuit Judge Walter H. Sanborn in Horton v. Stegmyer (C. C. A.) 175 F. 756, 758, 20 Ann. Cas. 1134, at page 1135:

"A federal court sitting in equity has jurisdiction to disregard or to enjoin the enforcement of an unconscionable judgment of a state or of a national court for new causes, such as fraud, accident, or mistake, which deceive the court into a wrong decree, or which prevent the judgment defendant from availing himself of a meritorious defense that was not fairly presented to the court which rendered the judgment. But it has no power to take such action on account of errors or irregularities in the proceedings on which the judgment or decree is founded, or on account of erroneous or illegal decisions by the court which rendered the judgment or decree. The reason of this rule is that cases of the former class present new controversies, which have never been raised in other courts, while cases of the latter class invoke a jurisdiction which does not exist, a jurisdiction in a federal court to review and revise the acts and decisions of courts of co-ordinate jurisdiction upon questions which they have lawfully considered and adjudged."

The consents and the orders based thereon were subject to the attack which was made on them in the court below. If they were procured by fraud or were due to the mistake of the beneficiary, they should be set aside.

In stating the rule as to the grounds upon which a decree discharging trustees may be set aside, where it was claimed that a release was obtained from the beneficiary by fraud, Lindley, L. J., in In re Webb, [1894] L. R. 1 Ch. 73, 80, used language applicable to the instant case:

"It is essential to shew that there has been some injustice done—to shew that there has been some fraud, some pressure, some overcharge, something wrong to cloak up which the release has been obtained. Prove that, and the release cannot stand."

It is not necessary at this time to decide whether a trustee's intermediate account allowed and confirmed by the court prior to L. 1933, c. 259, is conclusive or is *prima facie* correct only, subject to review and revision in connection with the final account, or under what circumstances and conditions such review and revision may be had in the absence of fraud or mistake. In this case the intermediate accounts and orders allowing and confirming them are voided by direct attack upon grounds of fraud and mistake, which are recognized grounds for the voidance even of a final account of a trustee. Thus the intermediate character of the annual accounts and orders allowing and confirming the same is eliminated from the case.

3. The findings of the court below on the issues involved are entitled to the same weight as the verdict of a jury. Wann v. Northwestern Trust Co. 120 Minn. 493, 497, 139 N. W. 1061. We are trying cases *de novo* instead of exercising the appellate function unless findings of fact supported by adequate evidence are final here. This is not the function of this court. Even in cases in which we might have found the facts differently had this court been the trier of fact, we are bound to accept findings as final. Sommers v. City of St. Paul, 183 Minn. 545, 551, 237 N. W. 427, 430, in which it was held that the rule applied "even if this court might be inclined to draw different inferences." Haedge v. Gaver, 173 Minn. 207, 217 N. W. 109; Waldron v. Page, 191 Minn. 302, 253 N. W. 894; S. Bader & Sons v. Gensler, 191 Minn. 571, 255 N. W. 97.

The order should be affirmed.

MR. JUSTICE HOLT took no part in the consideration or decision of this case.