ANDERSON, Justice (dissenting).
The Supreme Court of the United States has been emphatic: "In order for a state court to exercise specific jurisdiction, 'the suit ' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum. ' " Bristol-Myers Squibb Co. v. Super. Ct. of Cal. , --- U.S. ----, 137 S. Ct. 1773, 1780, 198 L.Ed.2d 395 (2017) (citation omitted).
*756 Appellant Adam Bandemer brought this litigation against respondent Ford Motor Company after he was injured while riding as a passenger in a Ford vehicle. But Ford neither designed nor manufactured the car in Minnesota. Nor did it sell or otherwise cause that vehicle to enter into Minnesota. Because all of Ford's Minnesota contacts, such as its data collection and marketing efforts, are unrelated to Bandemer's claims, the reasoning of the court here is inconsistent with controlling Supreme Court jurisprudence, and I respectfully dissent.
I.
Personal jurisdiction refers to "the court's power to exercise control over the parties" to litigation. Leroy v. Great W. United Corp. , 443 U.S. 173, 180, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979) ; see also In re Melgaard's Will , 200 Minn. 493, 274 N.W. 641, 645 (1937) ("[W]hom [a court] may bind by order or judgment, depends on ... its jurisdiction of the parties."). Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, a state court may not determine the rights and obligations of parties over whom it lacks personal jurisdiction. See Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee , 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) ("The requirement that a court have personal jurisdiction flows ... from the Due Process Clause.").
Minnesota's long-arm statute, Minn. Stat. § 543.19 (2018), "extend[s] the personal jurisdiction of Minnesota courts as far as the Due Process Clause of the federal constitution allows." Valspar Corp. v. Lukken Color Corp. , 495 N.W.2d 408, 410 (Minn. 1992). Accordingly, whether Minn. Stat. § 543.19 confers jurisdiction that is consistent with due process, such that Ford can be required to defend Bandemer's claims in Minnesota, "is a federal question, ruled by federal decisions." Atkinson v. U.S. Operating Co. , 129 Minn. 232, 152 N.W. 410, 410 (1915). We "may simply apply the federal case law." Valspar Corp. , 495 N.W.2d at 411.
We must begin with International Shoe Co. v. Washington , 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), "[t]he polestar of modern personal jurisdiction," Valspar Corp. , 495 N.W.2d at 411. "[A]ll assertions of state-court jurisdiction must be evaluated according to the standards set forth in International Shoe and its progeny." Shaffer v. Heitner , 433 U.S. 186, 212, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) ; see also Goodyear Dunlop Tires Operations v. Brown , 564 U.S. 915, 923, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) (acknowledging that "[t]he canonical opinion in this area remains International Shoe ").
Under International Shoe , a state court may constitutionally exercise personal jurisdiction over a defendant, even if the defendant is "not present within the territory of the forum," so long as the defendant has "minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " 326 U.S. at 316, 66 S.Ct. 154 (citations omitted). Post- International Shoe Supreme Court precedent further distinguishes between two types of "minimum contacts," as well as two resulting categories of personal jurisdiction.
First, if a defendant's contacts with the state in which suit is brought "are so constant and pervasive 'as to render [it] essentially at home in the forum State,' " then that forum may exercise "general" personal jurisdiction over the defendant. Daimler AG v. Bauman , 571 U.S. 117, 122, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) (citation omitted). Those "constant and pervasive" contacts, id. , need not be related to the litigation, Walden v. Fiore , 571 U.S. 277, 283 n.6, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014) ; see also *757 Burger King Corp. v. Rudzewicz , 471 U.S. 462, 473 n.15, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). General personal jurisdiction is thus "all-purpose," Daimler , 571 U.S. at 122, 134 S.Ct. 746, and "dispute-blind," BNSF Ry. Co. v. Tyrrell , --- U.S. ----, 137 S. Ct. 1549, 1559 n.4, 198 L.Ed.2d 36 (2017). Bandemer stipulated that Ford is not amenable to general personal jurisdiction in Minnesota. See Bandemer v. Ford Motor Co. , 913 N.W.2d 710, 713 n.1 (Minn. App. 2018).
The second type of permissible personal jurisdiction is "specific" or "conduct-linked." Daimler , 571 U.S. at 122, 134 S.Ct. 746. "For specific jurisdiction, a defendant's general connections with the forum are not enough." Bristol-Myers Squibb , --- U.S. ----, 137 S. Ct. at 1781. A state may assert specific personal jurisdiction only "[w]hen a controversy is related to or 'arises out of' a defendant's contacts with the forum." Helicopteros Nacionales de Colombia v. Hall , 466 U.S. 408, 414 & n.8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (explaining that the "essential foundation" of personal jurisdiction is "a 'relationship among the defendant, the forum, and the litigation' " (quoting Shaffer , 433 U.S. at 204, 97 S.Ct. 2569 )); see also Walden , 571 U.S. at 284, 134 S.Ct. 1115 ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."); Goodyear , 564 U.S. at 919, 131 S.Ct. 2846 ("In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.' " (citation omitted)).[1] As the Supreme Court explained recently, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State" when there is no connection between the forum and the "underlying controversy." Bristol-Myers Squibb , --- U.S. ----, 137 S. Ct. at 1781 (quoting Goodyear , 564 U.S. at 919, 131 S.Ct. 2846 ); see also Goodyear , 564 U.S. at 931 n.6, 131 S.Ct. 2846 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales.").
II.
With this overview of the controlling legal principles in mind, I now turn to the specific allegations of Bandemer's complaint and the facts available in the record from the parties' jurisdiction discovery.[2]
Bandemer's complaint against Ford asserts product liability, negligence, and breach-of-warranty claims based on a 2015 incident. Bandemer was a passenger in a 1994 Ford Crown Victoria driven by his friend, apparently on their way to go ice fishing, when the driver collided with a snow plow. The airbags of the vehicle did not deploy and, as a result, Bandemer suffered a severe brain injury.
The Crown Victoria was designed in Michigan; assembled in 1993 in Ontario, Canada; and sold in Bismarck, North Dakota *758 in 1994. The vehicle was first registered in Minnesota 17 years later, in 2011, by its fourth owner. The father of Bandemer's friend, the fifth owner of the 1994 Crown Victoria, registered the vehicle in Minnesota in 2013.
Bandemer's strict liability claim alleges that Ford "designed, manufactured, advertised, marketed, tested, inspected, furnished, sold and distributed" the 1994 Crown Victoria and placed it into the stream of commerce in a "defective and unreasonably dangerous" condition. He also asserts that the airbag system in the 1994 Crown Victoria was defective and unreasonably dangerous in 2015 because that system was "defectively and/or inadequately designed, tested, manufactured, assembled and installed," and had "inadequate or absent warnings" or notices to users. He alleges that the 1994 Crown Victoria was in "substantially the same condition" in 2015 as when it was "designed manufactured, furnished, sold and/or distributed" and that defective nature was the proximate cause of his injuries. He concludes that Ford knew or should have known of the risks associated with the 1994 Crown Victoria prior to producing and marketing the car, yet "willfully, wantonly, and recklessly manufactured and sold" the 1994 Crown Victoria.
Bandemer's negligence claim asserts that Ford negligently "designed, developed, manufactured, engineered, tested, marketed, inspected, distributed and/or sold" the 1994 Crown Victoria. His claim for breach of warranty alleges that Ford sold a "defective airbag system" into the stream of commerce, and because of the defects in the design and manufacture and Ford's alleged negligence, the airbag system failed, thus breaching warranties of merchantability, fitness for a particular purpose, and express warranties.
It is undisputed that Ford dealerships in Minnesota are independently owned and operated. Ford asserted, and Bandemer does not dispute, that no warranty repair work was conducted on the Crown Victoria in Minnesota; indeed, we accept as true Bandemer's allegation that the car was in "substantially the same condition" in 2015 as when Ford sold it in 1994.
In discovery, Ford admitted that it engages in "nationally-based" advertising for Ford vehicles, some of "which may reach the Minnesota market," and that it sends direct mail to consumers about various Ford products and services, "which may reach the Minnesota market." Ford also admitted that it provides "some creative content for" use in the regional advertising directed and run by independently owned and operated Ford dealerships. Finally, Ford admitted that dealerships, including Minnesota dealerships, "may access" Ford systems that provide dealers with vehicle, technical service, or service and repair information regarding Ford vehicles, and Ford receives information regarding vehicle performance from "across the United States, including in Minnesota," that may be used when considering future designs.[3]
*759 III.
The record is entirely insufficient to permit Minnesota to exercise specific personal jurisdiction over Ford in this litigation. Even taking the allegations of Bandemer's claims as true, all of the wrongful and negligent conduct alleged by Bandemer against Ford, including negligently designing and warning about the Crown Victoria and placing the vehicle into commerce, took place outside of Minnesota. In fact, all of the relevant conduct that frames the basis for Bandemer's claims took place well before the 1994 Crown Victoria was first registered in Minnesota in 2011 by someone other than the parties to this lawsuit. The 1994 Crown Victoria's airbag system was designed in Michigan (not Minnesota). The vehicle was assembled in Canada (not Minnesota), sold in North Dakota (not Minnesota), brought into Minnesota by someone other than Ford, and crashed by a third party into a snow plow operated by another third party. Indeed, all of Ford's conduct that, according to Bandemer, relates to his claims took place more than 20 years before the accident, in states other than Minnesota. There is simply no relationship between Ford's activities in Minnesota and Bandemer's claims.
The court presents a broad and generalized view of Ford's nationwide activities, some of which naturally occurred in or reached Minnesota, to conclude that Ford's Minnesota contacts relate to Bandemer's litigation. But this is a question of specific jurisdiction that we are deciding, and "general connections with the forum are not enough." Bristol-Myers Squibb , --- U.S. ----, 137 S. Ct. at 1781 (emphasis added). With discovery now in hand, the abstractions in Bandemer's allegations and arguments must give way to facts. See Rilley v. MoneyMutual, LLC , 884 N.W.2d 321, 334-35 (Minn. 2016) (" '[I]f [the defendant's] motion to dismiss is supported by affidavits, the nonmoving party cannot rely on general statements in his pleading.' " (citation omitted)), cert. denied , --- U.S. ----, 137 S. Ct. 1331, 197 L.Ed.2d 518 (2017).
Although Ford collected data from its independent dealerships across the nation, including, possibly, dealerships in Minnesota, and used that data to inform future design work, this generality is legally and factually irrelevant. See Bristol-Myers Squibb , --- U.S. ----, 137 S. Ct. at 1781 (explaining that it was both insufficient and irrelevant that the company "conducted research in California on matters unrelated to" the drug at issue in deciding whether Bristol-Myers Squibb was subject to specific jurisdiction in California on nonresidents' claims regarding the drug).
The record fails to establish the relevance of Ford's data collection to Bandemer's claims. Specifically, a Ford design engineer testified, and his testimony was uncontradicted, that the 1994 Crown Victoria's front passenger restraint system was designed in Michigan . The engineer in no way indicated that Minnesota data influenced the design, and Bandemer offered no allegations, discovery responses, or other evidence to establish a link between any of Ford's generally national activities and the conduct related to the design, manufacturing, advertising, and sales of the Crown Victoria that is the focus of his strict liability, negligence, and tort claims.
At best, possibilities can be stated. Ford's data collection efforts may have captured information in Minnesota that was incorporated into the design of the 1994 Crown Victoria and its component *760 parts, which Bandemer claims were defective. But with nothing more, "[i]t may have been" amounts to speculation. McCool v. Davis , 158 Minn. 146, 197 N.W. 93, 96 (1924). Conjecture and guess are not enough to satisfy due process.
Nor do Ford's current advertising activities relate to Bandemer's claims, which plainly focus on the design, manufacturing, and sale of the 1994 Crown Victoria and its restraint system. Bandemer did not allege, nor is there reason to think, that his friend's father would have seen Crown Victoria advertising at or around the time he purchased that vehicle from a third party almost 20 years after Ford first sold it. The court's focus on Ford's national advertisements fails to address Ford's fact-specific reply that no Minnesota advertisements mentioned the Crown Victoria. Cf. Rilley , 884 N.W.2d at 334 (stating that a "purely national advertising campaign that does not target Minnesota specifically cannot support a finding of personal jurisdiction"). The same is true of Ford's Minnesota-specific marketing: the 2016 "Ford Experience Tour" in Minnesota, the 1966 Ford Mustang built for the Minnesota Vikings, the "Ford Driving Skills for Life Free National Teen Driver Training Camp" in Minnesota, and Ford's sponsorship of multiple athletic events in Minnesota are equally irrelevant to Bandemer's strict liability, negligence, and breach of warranty claims, which are based on a car assembled in Canada, a restraint system designed in Michigan, and Ford's sale of that car in North Dakota.
In this regard, Ford's advertising is categorically different from the internet advertising that ultimately supported the exercise of personal jurisdiction in Rilley . In that case, a payday lender used nationwide television advertising, email communications with Minnesota residents, and internet advertisements to solicit applications from Minnesota residents for allegedly illegal loans. 884 N.W.2d at 325-26. The plaintiffs asserted, among other claims, that the lender's advertisements violated Minnesota's consumer protection laws. Id. at 325. The lender argued that the internet advertisements were irrelevant to the personal jurisdiction analysis because there was no evidence that any of the plaintiffs had actually seen any of the advertisements or that the advertisements caused any of the plaintiffs to apply for a payday loan. Id. at 336.
We held that the advertisements were "sufficiently 'related to' the [plaintiffs'] cause of action because they were a means by which [the lender] solicited Minnesotans to apply for the allegedly illegal loans." Id. at 337 (emphasis added) (citation omitted). Further, there was no question in Rilley that the defendant's advertisements related to the plaintiffs' challenge to the defendant's lending activities; indeed, one of the claims asserted that the lender's "website and advertising contained misrepresentations that violated Minnesota's consumer protection statutes." Id. at 325. Here, in contrast, the relationship between Ford's Minnesota advertisements or marketing activities, generally, and Bandemer's claims is not only attenuated, at best. Ford's advertising is different in character from the advertising at issue in Rilley . Put more bluntly and directly, the court does not identify even a single advertisement that references the Crown Victoria, let alone anything about the design and manufacture of that car or its airbag system.
The fact that Ford sold the Crown Victoria and thousands of other cars to dealerships in Minnesota cannot sustain the exercise of specific personal jurisdiction. "[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."
*761 Goodyear , 564 U.S. at 930 n.6, 131 S.Ct. 2846. There is good reason for looking askance at sales numbers. It is the connection between a defendant's forum contacts and a plaintiff's claims, not the mere quantity of a defendant's forum contacts, that establishes specific personal jurisdiction. As the Supreme Court has stated, "[w]hat is needed-and what is missing here-is a connection between the forum and the specific claims at issue." Bristol-Myers Squibb , --- U.S. ----, 137 S. Ct. at 1781. Accordingly, the fact that Ford has "regularly occurring sales" of other vehicles in Minnesota, years after it manufactured and sold the 1994 Crown Victoria, cannot justify the exercise of personal jurisdiction over Ford, requiring it to defend against claims that are unrelated to those sales.
The number of other vehicles that Ford sold in Minnesota is irrelevant for another reason: the Supreme Court squarely rejected a similar quantity-over-quality argument in Bristol-Myers Squibb , --- U.S. ----, 137 S. Ct. at 1781. The Bristol-Myers Squibb Court described the California Supreme Court's "sliding scale" approach to personal jurisdiction. Id. Under that approach, "the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims." Id. The Court rejected this approach as a "loose and spurious form of general jurisdiction." Id. ; see also Goodyear , 564 U.S. at 927, 931, 131 S.Ct. 2846 (reversing the North Carolina Court of Appeals, which had conducted a "stream-of-commerce analysis [that] elided the essential difference between case-specific and all-purpose (general) jurisdiction").[4]
Because all of Ford's Minnesota contacts are unrelated to Bandemer's claims, the court here upholds a form of general jurisdiction over Ford no less "loose and spurious." The court essentially performs a "dispute-blind" analysis of Ford's contacts with Minnesota, Tyrrell , --- U.S. ----, 137 S. Ct. at 1559 n.4, without requiring that those contacts-Ford's sales, data collection, and marketing-be linked to Bandemer's claims in any meaningful way. The court's analysis is thus neither "conduct-linked," Daimler , 571 U.S. at 122, 134 S.Ct. 746, nor "case-specific," Goodyear , 564 U.S. at 927, 131 S.Ct. 2846. The court commits the error of the North Carolina Court of Appeals: "elid[ing] the essential difference" between specific and general jurisdiction. Of course, the Supreme Court reversed that decision. Id. at 931, 131 S.Ct. 2846.
The court focuses on a different statement from Bristol-Myers Squibb , that "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State ....' " --- U.S. ----, 137 S. Ct. at 1780. According to the court, four facts show that this "occurrence ... in the forum" requirement is met: "[T]he car crash and *762 the injury to the plaintiff occurred in Minnesota, the car was registered in Minnesota, the plaintiff and the driving defendant are Minnesota residents, and the plaintiff was treated for the injuries in Minnesota."
Whatever other requirement these facts meet, they do not establish that Ford's Minnesota contacts relate to Bandemer's litigation. Ford cannot be haled into a Minnesota court simply because an accident involving a vehicle manufactured by Ford (in another location) occurred here. See Walden , 571 U.S. at 290, 134 S.Ct. 1115 (stating that "mere injury to a forum resident is not a sufficient connection to the forum"); cf. World-Wide Volkswagen Corp. v. Woodson , 444 U.S. 286, 296, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (stating that a "seller of chattels" does not "appoint the chattel his agent for service of process"). The "driving defendant" to which the court refers is not Ford, and the fact that the fifth owner of the car ended up registering it in Minnesota is equally irrelevant. See Walden , 571 U.S. at 291, 134 S.Ct. 1115 ("[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State.").
The court's reliance on the activities of persons other than Ford-the injured plaintiff, the co-defendant who was driving, and the third party who brought the car into Minnesota-is fundamentally flawed. The court ignores the principle that "[t]he personal jurisdiction requirement recognizes and protects an individual liberty interest" and that "[i]t represents a restriction on judicial power ... as a matter of individual liberty." Ins. Corp. of Ir. , 456 U.S. at 702, 102 S.Ct. 2099. If the actions of someone other than the individual with the protected liberty interest may expose that individual to a forum's judicial power, then "individual liberty interest," id. , is at most a misnomer.
In sum, because the due process right belongs to the defendant, it is the defendant's forum contacts that matter-not the plaintiff's contacts, not a co-defendant's contacts, not a third party's contacts. And when specific personal jurisdiction is asserted, the contacts that the defendant makes with the forum must relate to the plaintiff's claims. Here, even accepting the allegations and supporting evidence as true, the court's analysis does not establish that Ford's Minnesota contacts relate to Bandemer's claims. The reasoning of the court is therefore, at a minimum, inconsistent with controlling Supreme Court jurisprudence and will likely lead other litigants and courts astray. For these reasons, I would reverse the court of appeals and remand this case to the district court with directions to dismiss Bandemer's claims against Ford for lack of specific personal jurisdiction.

At oral argument, Bandemer asserted that in-state, cause-of-action-related activity by Ford is not required. This argument lacks merit. Bandemer's two authorities for this proposition, the dissent in Bristol-Myers Squibb , --- U.S. ----, 137 S. Ct. at 1788 n.3 (Sotomayor, J., dissenting), and a decision from the West Virginia Supreme Court, State ex rel. Ford Motor Co. v. McGraw , 237 W.Va. 573, 788 S.E.2d 319, 343 (2016), are not controlling.

As the court states, at this stage of the proceeding, we must accept Bandemer's allegations as true. Juelich v. Yamazaki Mazak Optonics Corp. , 682 N.W.2d 565, 569-70 (Minn. 2004). We must also consider the "supporting evidence" as true. Hardrives, Inc. v. City of LaCrosse , 307 Minn. 290, 240 N.W.2d 814, 816 (1976).

The court's explanation of Ford's discovery answers omits this nationwide context, thus transforming answers regarding future possibilities that have nothing to do with any Crown Victoria, let alone the 1994 model, into Minnesota-specific admissions. Nothing in Ford's discovery answers admitted that Ford "collects safety-related data in Minnesota" or that it used data collected "through Ford dealerships in Minnesota ... to inform improvements to its designs and to train mechanics." In fact, Ford "denied" Bandemer's Request for Admission that asked Ford to admit that it "gathers from dealerships, including Ford's dealerships in Minnesota," data that is used to "redesign its products sold into Minnesota and elsewhere." Ford admitted that it "receives information regarding vehicle performance [from] across the United States, including in Minnesota" and that information "may be used by Ford as it considers future designs." (Emphasis added.) Taking the allegations of his complaint as true, Bandemer's claims focus on Ford's conduct with respect to the 1994 Crown Victoria, not possible considerations regarding future designs.

I agree with the court that Goodyear is a general jurisdiction case. I disagree that my reliance on Goodyear is therefore unwarranted. The court fails to explain why "elid[ing] the essential difference" between general jurisdiction and specific jurisdiction is somehow less erroneous in a case that raises a claim of specific jurisdiction than in a case that raises a claim of general jurisdiction.
Nor is note six of Goodyear the only place where the Court has rejected the approach that our court doubles-down on today: that a defendant's extensive, though suit-irrelevant, forum contacts are sufficient to sustain specific jurisdiction. See Bristol-Myers Squibb , --- U.S. ----, 137 S. Ct. at 1781 (rejecting an approach under which "the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims" as a "loose and spurious form of general jurisdiction").